**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| **BEVERLY WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARY SITUATED,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Civil Action No._____** ) |
| **STEWARD HEALTH CARE SYSTEM, LLC; AND MEDICAL REIMBURSEMENTS OF AMERICA,** | ) ) ) **JURY TRIAL DEMANDED** ) |
| **Defendants** | ) ) |

## CLASS ACTION COMPLAINT

COMES NOW BEVERLY WILLIAMS, Plaintiff, on behalf of herself and all others similarly situated, and for her Class Action Complaint against Defendants STEWARD HEALTH CARE SYSTEM, LLC (hereinafter "Steward") and MEDICAL REIMBURSEMENTS OF AMERICA (hereinafter "MRA"), respectfully alleges the following:

### INTRODUCTION

1.       When a person is injured due to the negligence of another (such as an automobile accident) and receives medical attention from a hospital, every hospital in Texas has certain *rights and responsibilities* when it attempts to collect monies for the medical services provided. First, Texas law provides that if the care rendered by a hospital occurred within seventy-two (72) hours of the accident, the hospital may assert a lien for the reasonable and regular rate for the services provided.

2.      In addition, a hospital may obtain certain rights and obtain authority to assert an interest in a patient's cause of action against a third-party tortfeasor by virtue of an assignment of interest. Usually executed during the patient admission process, such an assignment may provide the hospital an interest in insurance proceeds to be paid to the patient or provide the hospital with an actual independent right against a responsible third-party. Importantly, the assignment is limited to the claim that the patient could/can make against the responsible third-party for the cost of medical care received as a result of the third-party's conduct.

3.      An injured patient's ability to recover medical expenses is limited to only that amount which has been paid or ***must be paid by or for the claimant***.[1] Thus, any rights asserted by the hospital pursuant to an assignment from a patient would, as a matter of Texas law, be limited to only those medical expenses which have been paid or ***must be paid by or for the claimant*** and excludes any which the hospital has no right to be paid.

4.      In those situations where the patient has health insurance and the hospital is authorized or directed to bill the health benefit plan, the hospital has the *mandatory responsibility* of timely billing the patient's health benefit plan for the rendered services. Texas law requires the hospital to bill the patient's health benefit plan not later than the applicable contracted deadline or if no deadline exists then by the first day of the eleventh (11th) month after the date the services are provided. Further, Texas law mandates that if the hospital fails to timely bill the patient's health benefit plan, the hospital *may not recover from the patient* any amount that the patient would not otherwise have been obligated to pay (such as a co-pay and/or deductible).

---

[1] *See* Texas Civil Practice & Remedies Code § 41.0105.

CLASS ACTION COMPLAINT                                                                                Page 2

5.     Accordingly, a hospital may obtain and assert an assignment of interest in the patient's cause of action pursuant to the assignment. But if the patient has health insurance, the hospital's assigned interest consists of and is limited to the amounts the patient's insurance company would be required to pay plus any applicable co-pay or deductible payments from the patient/insured. The assignment, as a matter of Texas law, cannot be for the hospital's "list" or billed charges, but only for what the hospital is allowed to be reimbursed through the insurance plan. In addition, the hospital ***must also*** bill the patient's insurance company if insurance is available. However, ***if the hospital fails or refuses to timely bill the patient's insurance company***, then the hospital is no longer owed money from the patient for any amounts greater than what the patient would not otherwise have been obligated to pay (co-pay and deductible). Once the patient is no longer obligated to pay the hospital any monies beyond the co-pay and deductible, then the assigned interest to the hospital also becomes diminished and limited to the same amount: the patient's co-pay and/or deductible.

6.     Thus, in cases of assignment of rights from the patient who is covered by a health insurance policy, a Texas hospital's rights to recovery in a patient's cause of action against a third-party tortfeasor is limited to the amounts required to be paid pursuant to the health insurance policy plus the patient's obligations pursuant to the policy (co-pays and/or deductibles). But if the hospital fails to timely bill the patient's health insurance, the hospital divests itself of claims against the patient or tortfeasor for monies owed beyond the patient's obligations under the health insurance plan.

7.     Similarly, in cases where a hospital asserts a lien, Texas law expressly states that for those patients who are covered by a health insurance policy and where the hospital fails to timely bill that insurance plan according to contract or statute, then the lien no longer covers those

charges which become barred by operation of law. Thus, a hospital's failure to timely bill a patient's health insurance plan substantially reduces the hospital's rights to recovery pursuant to either an assignment of interests or statutory lien.

8.      In this case, Plaintiff was injured in an automobile accident caused by a third party.  Plaintiff sought medical treatment from her local hospital, Wadley Regional Medical Center (hereinafter "Wadley"). At the time the services were provided, Plaintiff maintained health insurance through Blue Cross Blue Shield of Texas (hereinafter "BCBST"), which is honored by Wadley Regional Medical Center and for the payment of service at established rates.  However, Defendants did not bill BCBST for services rendered to Plaintiff. Instead, Defendants, acting alone or in concert with each other, engaged(es) in an unlawful, deceptive scheme of revenue enhancement through the collection of charges which Wadley (and these Defendants) did not ever rightfully possess as asserted and certainly now no longer possess. Further, Defendant MRA is a third-party debt collector and required to file a surety bond with the Texas Secretary of State's office, making all its communications false because it has not right to collect a debt in Texas.

9.      Based upon Defendants' formalized revenue enhancement scheme as evidenced by their conduct and written correspondence, Plaintiff alleges her situation is not isolated. These Defendants, acting alone or in concert with each other, have unlawfully and deceptively asserted rights for the collection of charges against other Texas patients in situations similar to Plaintiff.  In doing so and based upon Defendants' unlawful and deceptive scheme, Plaintiff asserts Defendants, acting alone or in concert, have unlawfully collected monies from Texas patients for which these Defendants were precluded from receiving by virtue of contracts with health insurance companies and/or Texas law.  Defendants' unlawful actions include the assertion of entitled to monies from precluded sources as a matter of contract and Texas law, the assertion or threats of assignments

which exceeded the amounts which could be assigned, the failure to timely file insurance claims with Texas patients' health benefit plans, and the assertion or threats of assignments or liens which no longer allowed for recovery. Further, Defendant MRA has/is falsely communicating it has a right to collect debts in Texas—which it does not.  Plaintiff seeks the certification of this matter as a class action; she seeks declaratory judgment that Defendants' actions, whether alone or in concert, violate Texas law; she respectfully requests injunctive relief be entered against the Defendants enjoining their deceptive conduct; and she seeks an award on behalf of the Class from these Defendants of all monies unlawfully obtained by Defendants.

## PARTIES

10.     Plaintiff, BEVERLY WILLIAMS, is a citizen of Bowie County, Texas, and pursuant to FED. R. CIV. P. Rule 23(b)(2) and 23(b)(3), Plaintiff seeks certification of the following Classes:

**Texas Patient Class Applicable to Both Defendants (Defendants' Health Insurance Class):**

*All Texas residents who maintained/maintains valid health insurance with a health insurance company that had/has a contract with any Texas hospital owned or operated by Defendant Steward (to include but not limited to Odessa Regional Medical Center, Odessa; Scenic Mountain Medical Center, Big Springs; Southwest General Hospital, San Antonio; St. Joseph's Hospital, Houston; The Medical Center of Southeast Texas, Port Arthur; and Wadley Regional Medical Center, Texarkana); who received/receives as patients any type of healthcare treatment from any Texas hospital owned or operated by Defendant Steward; and Defendant Steward, or Defendant MRA, or the hospital on whose behalf Defendants have acted asserted a claim against the patient, the patient's attorney, an auto or liability insurer, and/or any third party based on the patient's third-party tort claim.*

**Texas Patient Class Applicable to Defendant MRA (MRA Health Insurance Class):**

*All Texas residents who maintained/maintains valid health insurance with a health insurance company that had/has a contract with a hospital in Texas; who received/receives as patients any type of healthcare treatment from any Texas*

*hospital; and Defendant MRA, or the hospital on whose behalf Defendant MRA has acted, asserted a claim against the patient, the patient's attorney, an auto or liability insurer, and/or any third party based on the patient's third-party tort claim.*

**Texas Patient Class Applicable to Defendant MRA (MRA Third-Party Debt Collection Class):**

*All Texas residents who received/receives as patients any type of healthcare treatment from any Texas hospital; and Defendant MRA asserted a claim against the patient, the patient's attorney, an auto or liability insurer, and/or any third party based on the patient's third-party tort  claim.*

Excluded from the proposed Classes are the following individuals or entities:

i.        Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out that will be formally established by the Court;

ii.       Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

iii.      Any currently sitting federal judge or magistrate in the current style and/or any persons within the third degree of consanguinity to such judge or justice;

iv.      Any person seeking claims (personal injury or otherwise) arising out of the underlying medical care;

v.       Any person who has given notice to the Defendants by service of civil suit and alleged he or she has suffered personal injury as a result of Defendant(s) conduct; and

vi.      Any person seeking punitive and/or exemplary damages.

Throughout these pleadings and due to the common allegations related to them, the Classes together will be referred to as "each Class" or "Classes" or "Class Members" unless specifically alleged otherwise. For each Class, Plaintiff seeks declaratory and injunctive relief enjoining these Defendants actions. For each of the Health Insurance Classes, Plaintiff seeks declaratory and monetary damages in the amount of all monies for which Defendants could not obtain or those monies in excess of any co-pays or deductibles of the Class Members paid to Defendants or the

hospital upon whose authority they are/were acting and flowing from a determination that Defendants' conduct was unlawful.  For the MRA Third Party Debt Collection Class, Plaintiff seeks statutory damages and an award of all monies obtained by MRA or the hospitals upon whose authority it acted arising from its false/deceptive communications.

11.     STEWARD HEALTH CARE SYSTEM, LLC, ("Steward") is a foreign limited liability company with its headquarters located in Dallas, Texas. Steward may be served through its agent for service of process: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

12.     MEDICAL REIMBURSEMENTS OF AMERICA, INC. ("MRA") is a foreign for-profit corporation with its headquarters in Brentwood, Tennessee. MRA may be served through its agent for service of process: Cogency Global, Inc., 1601 Elm St., Suite 4360, Dallas, Texas 75201.

## JURISDICTION AND VENUE

13.     Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over the Plaintiff's and the Class Members' claims in that Plaintiff is a citizen of a State different from at least one defendant and Plaintiff seeks to represent a class of persons in a matter in controversy which exceeds the sum or value of $5,000,000, exclusive of interest and costs.

14.     This Court has general jurisdiction over Defendant Steward because it maintains its headquarters in the State of Texas. This Court has specific jurisdiction over the Defendants in that Defendants have sufficient minimum contacts with Texas and within the Eastern District of Texas to establish Defendants' presence in Texas and certain material acts upon which this suit is based occurred within the Eastern District of Texas, to include but not limited to: (1) medical treatment rendered to Plaintiff in this District; and (2) Defendants' contracts or agreements with

Wadley Regional Hospital and other hospitals in Texas which relate to the collection of medical bills and the subject matter of this lawsuit; and (3) Defendants' actions which relate to the collection of medical bills from Plaintiff and others in violation of Texas law as alleged herein.

15.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. 1391(b)(1-3) and (c) in that: (1) Defendants reside in the Eastern District of Texas because they are subject to personal jurisdiction within the Eastern District of Texas; and (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Defendants subject to personal jurisdiction in this district.

## FACTS

16.      Defendant Steward is the largest private, for-profit hospital operator in the United States. Steward operates thirty-seven (37) hospitals in nine states with six (6) hospitals in Texas: Odessa Regional Medical Center, Odessa; Scenic Mountain Medical Center, Big Springs; Southwest General Hospital, San Antonio; St. Joseph's Medical Center, Houston; The Medical Center of Southeast Texas, Port Arthur; and Wadley Regional Medical Center, Texarkana. As an operator, Steward leases hospitals, rather than own them. For all purposes related to this case, Steward is responsible for patient administration, services, and billing in its Texas hospitals.

17.     Steward is the operator of Wadley Regional Medical Center in Texarkana, Texas, and promotes the hospital as "Wadley Regional Medical Center A Steward Family Hospital," and further incorporates the Steward logo in such promotions. Notably on the Wadley Regional Medical Center website, Steward notified viewers of a "Visitor Restrictions in Effect *Steward Wide*" in response to the Covid-19 outbreak.  https://www.wadleyhealth.org (as of May 20, 2020) (emphasis added). Whenever it is alleged herein that Defendant Steward

or Wadley Regional Medical Center or Wadley did any act or failed to do any act, it is also meant that Defendant Steward's agents, employees, ostensible agents, agents by estoppel, and/or representatives did such a thing or failed to do such a thing and that at the time such an act or omission occurred, the event occurred (a) with Defendant Steward's authorization, (b) within the normal course of Defendant Steward's agency, employment, or representation, and/or (c) as if the employee, agent, or representative were operating in the course and scope of their employment/agency/representative relationship with Defendant Steward.

18.     Defendant MRA's business model is to promote itself as offering specialty reimbursement solutions by identifying and recovering additional revenues for hospitals and health systems on a nationwide basis. As one source of additional revenue, MRA touts its ability to increase automobile claim payments to hospitals. MRA advertises monies to hospitals from motor vehicle accidents as "Your Rightful Revenue Paid In Full."

19.     In  regard to why a hospital should outsource its motor vehicle accident claims, MRA states:

> While these claims typically represent less than 3% of gross revenue, they represent a disproportionately higher expense to collect due to the high level of manual processing required to get them correctly paid. The good news is, they have the potential to *generate significantly higher reimbursement rates*, when managed correctly. (emphasis added).

Further, as to why a hospital shouldn't just bill health insurance, MRA states:

> You should always do your best to identify the responsible party(s) up front. While Health insurance may exist, it often pays only after a hospital has proven there are no other responsible parties. To avoid time-consuming Health denials, research must occur in advance of billing. In addition to avoiding denials, hospitals also benefit from *higher reimbursement rates available from the responsible party*. (emphasis added).

20.     Importantly, MRA is fully knowledgeable about improper billing of liability claims when the hospital has a contractual relationship with a health insurance plan, as it assures hospitals of its compliance practices:

> In addition to ensuring MSP Compliance, MRA's proven practices ensure against improper billing of liability claims whenever a contractual relationship already exists. Without proven processes that demonstrate best efforts to identify pre-existing contractual relationships, ***hospitals are at risk of over-billing patients and creating exposure to harmful litigation***.  (emphasis added).

21.     MRA maintains a contract with Wadley Regional Medical Center through Steward for the specific purpose of identifying and recovering insurance benefits for accident-related patient care. In this capacity, Steward is fully apprised of MRA's activities regarding individual claim status of injured automobile accident patients due to MRA's portal and the ability for Steward to have "real-time access to accident claim status" due to a "bi-directional note feed established" at the implementation of the contract. In addition, as it does with all clients, MRA's services provided to Steward are pursuant to a contingency fee based upon monies it collects from "Property and Casualty, Liability, and Worker's Compensation carriers."

22.     Whenever it is alleged herein that Defendant MRA, or Defendant Steward through Defendant MRA, or Wadley Regional Medical Center or Wadley through Defendant MRA did any act or failed to do any act, it is also meant that Defendant MRA's agents, employees, ostensible agents, agents by estoppel, and/or representatives did such a thing or failed to do such a thing and that at the time such an act or omission occurred, the event occurred (a) with Defendant MRA's authorization, (b) within the normal course of Defendant MRA's agency, employment, or representation, and/or (c) as if the employee, agent, or representative were operating in the course and scope of their employment/agency/representative relationship with Defendant MRA.

23.     In those Texas hospitals which Defendant Steward operates and which contract with Defendant MRA, Defendants have in place admission screening systems, protocols, and procedures which seek to determine whether a patient has been involved in an automobile accident. If it is determined that a patient has been involved in an automobile accident, Defendants have in place systems, protocols, and procedures which list Defendant MRA as the primary insurance. Even in those situations where a Texas patient has health insurance, Defendants nonetheless list Defendant MRA as the primary insurance rather than the patient's own health insurance.

24.     In those Texas hospitals which contract with Defendant MRA, Defendant MRA's services implement screening systems, protocols, and procedures which seek to determine whether a patient has been involved in an automobile accident. If it is determined that a patient has been involved in an automobile accident, Defendant MRA's services implement systems, protocols, and procedures which list Defendant MRA as the primary insurance. Even in those situations where a Texas patient has health insurance, Defendant MRA's service implement measures which list Defendant MRA as the primary insurance rather than the patient's own health insurance.

25.     On July 5, 2018, Plaintiff, Beverly Williams, was a passenger in a vehicle heading north on Highway 59 in Cass County, Texas. Another vehicle heading south crossed the median and struck the vehicle in which Plaintiff was travelling. All persons involved were transported by ambulance to various local/regional hospitals. Plaintiff was taken to CHRISTUS St. Michael in Atlanta, Texas, and received medical treatment. She was discharged from the emergency department the same day.

26.     Five days after the accident, on July 10, 2018, Plaintiff went to Wadley Regional Medical Center due to ongoing medical issues from the wreck.  During the admission process, Plaintiff notified Defendant Steward's personnel that she had health

insurance through Blue Cross Blue Shield of Texas ("BCBST"). However, during the screening process, Defendants had in place their unlawful system, which upon identifying Plaintiff as having been involved in an automobile accident, listed Defendant MRA as the "Primary insurance." Further, Defendants' unlawful system omitted Plaintiff's health insurance plan as the source for payment, listed her as "SELF PAY," and further coded her financial status as "Legal." After being there for a little over seven (7) hours, Plaintiff was treated and released from Wadley.

27.    Plaintiff's treatment from Wadley resulted in medical charges of $9,750.79.

28.    At the time of Plaintiff's treatment and thereafter, Plaintiff had valid health insurance coverage with BCBST.

29.    At the time of Plaintiff's treatment and thereafter, Wadley and/or Defendant Steward had a contract with BCBST which required Wadley and/or Defendant to submit BCBST insured patients' bills to BCBST for payment.

30.    At the time of Plaintiff's treatment and thereafter, Wadley and/or Defendant Steward had a contract with BCBST with established rates for reimbursement from BCBST for BCBST's insureds treated at Wadley.

31.    At the time of Plaintiff's treatment and thereafter, the established reimbursement rates which BCBST would have been required to pay on Plaintiff's behalf to Wadley and/or Defendant Steward *plus* Plaintiff's obligation (co-pay or deductible amount) both together amounted to less than $9,750.79.

32.    At the time of Plaintiff's treatment and thereafter, Plaintiff's assignment of rights to Wadley and/or Defendant Steward amounted to rights in a claim of less than

$9,750.79. Accordingly, at no time did Defendants ever possess the right to claim an amount of $9,750.79 from Plaintiff or any third party.

33.     At the time of Plaintiff's treatment and thereafter, the BCBST contract with Wadley and/or Defendant Steward precluded Defendants and Wadley from seeking payment for covered services from other sources, including from the patient directly, medical payment benefits from the patients' auto insurer, turning the bills over to collections, or filing liens against patients' property, including personal injury claims.

34.     Unbeknownst to Plaintiff, on July 26, 2018, Defendant MRA sent a letter to Safeway Insurance Company.  Safeway Insurance Company is the liability insurance company for the automobile which collided with the car in which Plaintiff was a passenger. In that letter, Defendant MRA represented Beverly Williams owed a balance of $9,750.79 and further stated:

> Please be advised Medical Reimbursements of America has been contracted by Wadley Regional Medical Center – IASIS to coordinate insurance benefits for accident-related patient care.  Enclosed please find an itemized statement and/or relevant HCF 1500s/UB04s in the total amount of *$9750.79 which the above-referenced patient has assigned directly to Wadley Regional Medical Center – IASIS at admission and/or discharge*.*
>
> Should you reach an agreement with the claimant, please make your check draft payable to Wadley Regional Medical Center – IASIS.

(Emphasis added). In the footnote "*", Defendant MRA stated, "*Please be advised that Assignments of Benefits may not attach to Third Party Liability claims in all jurisdictions.*"

35.     Defendants' July 26, 2018, letter to Safeway Insurance expressly asserts an assigned interest in recovery of charges for Wadley's provision of services to Plaintiff. But Defendants falsely assert that Plaintiff owed a balance of $9,750.79 when in fact any obligation owed by Plaintiff and her insurer, BCBST, was less than $9,750.79. Defendants' July 26, 2018, letter is also deceptive, false, and misleading because Defendants had no assigned interest from

Plaintiff to allow them to assert a claim for the list price of $9,750.79. Defendants' July 26, 2018, letter is also deceptive, false, and misleading because Wadley and/or Defendant Steward were contractually precluded by BCBST and state law from seeking payment from third-parties for covered services to Plaintiff.  Further, Defendant MRA is a third-party debt collector and required to file a surety bond with the Texas Secretary of State's office, making the July 26, 2018, letter false and deceptive because MRA has no right to collect a debt in Texas.

36.     Plaintiff subsequently retained legal counsel for her claim against the negligent third party who caused the accident. While investigating the claim, Plaintiff's counsel obtained Plaintiff's treatment and billing records from Wadley. In response, Defendant Steward charged $9,750 for the claimed services to Plaintiff, and the billing listed Defendant MRA as the payer. Also included with the billing was a letter from Defendant MRA dated November 16, 2018, which stated it had been contracted by Wadley to "coordinate insurance benefits for accident-related patient care." Defendant MRA also identified as insurance coverage for Plaintiff's medical bills the Safeway Insurance liability insurance policy and a no-fault under-insurance policy for the owner of the vehicle in which Plaintiff was riding. Further, Defendant MRA made the following statement in the letter, "Should you reach a settlement on this claim, please make your check draft payable to Wadley Regional Medical Center[.]"

37.     Defendants' November 16, 2018, letter regarding Plaintiff's account is deceptive, false, and misleading. Defendants had a statutory duty to submit Plaintiff's charge to her health insurance plan. Because she was insured and Defendants refused to bill her insurance company, Defendant's only claim against Plaintiff was statutorily limited to her co-pay or deductible amounts. Defendants' representations and attempts to somehow stake a claim to Plaintiff's possible "settlement on this claim" is also false because they ***never*** had authority against the

settlement or claim for the full amount billed. Further, Defendants were statutorily required to bill Plaintiff's insurance and not seek monies from the "settlement of this claim." Plaintiff had previously made Defendants aware she had health insurance, which they failed to list and were required to bill. Further, Defendants' November 16, 2018, letter is also deceptive, false, and misleading because Wadley and/or Defendant Steward were precluded by contract with BCBST and state law from seeking payment from third-parties for covered services to Plaintiff. Finally, Defendant MRA is a third-party debt collector and required to file a surety bond with the Texas Secretary of State's office, making the November 16, 2018, letter false and deceptive because MRA has no right to collect a debt in Texas.

38.     On December 26, 2018, Defendant MRA sent another letter regarding Plaintiff's account. Again, it reiterated it has been contracted by Wadley (Defendant Steward) to coordinate insurance benefits for "accident-related patient care" and Plaintiff's balance of $9,750.79. The letter further states, "Our records indicate the above-referenced patient is pursuing a liability action in connection with his/her medical treatment." Defendants' December 26, 2018, letter is deceptive, false, and misleading. Defendants' balance amount of $9,750.79 is false, and Defendants' inference of some authority over her "liability action in connection with" her treatments at Wadley for $9,750.79 was also false in that they had no authority at all for the full value of the billed services. Further, Defendants' December 26, 2018, letter is also deceptive, false, and misleading because Wadley and/or Defendant Steward were precluded by contract with BCBST and state law from seeking payment from third-parties for covered services to Plaintiff. Finally, Defendant MRA is a third-party debt collector and required to file a surety bond with the Texas Secretary of State's office, making the December 26, 2018, letter false and deceptive because MRA has no right to collect a debt in Texas.

39.     Unbeknownst to Plaintiff, on January 4, 2019, Defendant MRA sent a letter to Amica, the no-fault insurance company for the automobile in which Plaintiff was a passenger. In that letter, Defendant MRA represented Plaintiff owed a balance of $9,750.79 and further stated:

> Please be advised Medical Reimbursements of America has been contracted by Wadley Regional Medical Center to coordinate insurance benefits for accident-related care. It has come to our attention that our office previously forwarded you claims due for this patient in error.  Please be advised that this patient *has commercial health insurance which will be billed at this time.*  Please be aware that we may be sending a subsequent bill to you should there be any remaining patient responsibility.

Plaintiff does not have the prior letter from Defendant MRA which falsely and without authority made a claim against the no-fault policy for the $9,750.79, but Defendant's January 4 letter admits Defendant MRA did just that: made a false claim against possible insurance proceeds. Further, Defendants here acknowledge that Plaintiff has "commercial health insurance" which will be billed. Further, as they had no authority to make a claim against any third-party policy or proceeds for the full amount of the billed services, Defendants assertion of the balance for the list price for services is false.  Further, the sentence about remaining patient responsibility is false because Defendants admit there is health insurance and would be precluded from balance billing. Finally, Defendant MRA is a third-party debt collector and required to file a surety bond with the Texas Secretary of State's office, making the January 4, 2019, letter false and deceptive because MRA has no right to collect a debt in Texas.

40.     On February 20, 2019, Plaintiff's counsel wrote to Wadley patient billing department and directed Wadley to "immediately submit your bill to the patient's health insurance provided to Wadley Regional Medical Center at the time of service . . . . Please indicate your intent to bill BCBS in satisfaction of your asserted charges."

41.     In response, Defendant Steward falsely claimed the following:

> We are in receipt of your request to bill the medical insurance **instead of the $9750.79 coming from your client**.  Unfortunately, we will not be billing the insurance company for this service.  The medical coverage will only be applicable if medical services were rendered, if the services were rendered because of an auto accident, the medical coverage will not process.

Accordingly, Defendants' deceptive scheme is admitted in full: falsely declare health insurance *will not cover* auto accident injuries, intentionally not bill health insurance plans, and seek payment for the full amount of the bill "coming from your client." Defendants statements that they were owed $9,750.79; that the $9,750.79 would be coming from Plaintiff; that Plaintiff's insurance would not cover Plaintiff's treatment; and that they had any such type of claim at all against Plaintiff were all false, misleading, and deceptive.

42.     As of the date of the filing of this lawsuit, Defendants have not submitted Plaintiff's medical bills for services at Wadley to her health insurance carrier.

43.     Due to Defendants' intentional acts of not submitting her medical bills for services at Wadley to her health insurance carrier, Plaintiff stands at risk of Defendants asserting this threatened claim against her.

44.     At all times in which Steward, MRA, or any hospital upon whose authority they have acted have filed a lien or took any action, those parties have done so only because the respective hospital engaged in conduct in its capacity as a seller or lessor of goods and service, those parties filed the lien or took action based upon a claim through the respective hospital's capacity as a seller or lessor of goods and services, the filing of the lien or taking of action arose out of a commercial transaction involving the respective hospital's goods or services provided, and the intended audience of the Defendants' and hospitals' actions were Plaintiff and other Texas patients as the actual or potential customers for the kinds of goods and service provided by the respective hospitals.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff incorporates the preceding allegations by reference.

46.     Defendant MRA is a third-party debt collector and required to file a surety bond with the Texas Secretary of State's office. Yet, it has made demands upon Plaintiff and other Class Members which are false and deceptive because MRA has no right to collect a debt in Texas.

47.     Defendants have falsely stated to Class Members, Class Members' attorneys, or third parties that Defendants or their hospitals are owed a balance for services provided which exceed the contractual amounts due from Class Members and Class Members' health insurance companies.

48.     Based on purported assignments of interests, Defendants have falsely asserted claims as interested parties against Class Members, Class Members' attorneys, or third parties for amounts that exceed the contractual amounts due from Class Members and Class Members' health insurance companies.

49.     Defendants or their hospitals have not timely billed or failed to bill Class Members' health insurance companies for services rendered by a hospital.

50.     Upon the failure to bill Class Members' health insurance companies, Defendants have falsely asserted balances against Class Members, Class Members' attorneys, and third parties to which they were no longer allowed to recover—either by a direct claim, by assignment, or by lien.

51.     Defendants and their hospitals maintain contracts with health insurance carriers for policies benefiting Class Members and which preclude Defendants and their hospitals from seeking payment for covered services from other sources than the contracts

and policies benefiting Class Members, including from the Class Member directly, medical payment benefits from the Class Members' or third-party auto insurer, turning the bills over to collections, or filing liens against patients' property, including personal injury claims. State law also mandates timely billing to insurance companies.

52.     Yet, Defendants have falsely made claims against Class Members, Class Members' attorneys, Class Members' and third-party auto insurers, and other persons which are all precluded by Texas law and the contracts maintained between Defendants and their hospitals and Class Members' insurance carriers.

53.     Based on Defendants' false assertions of an interest (either as to the amounts or those precluded by Texas law and contract) in Class Members' third-party liability claims, the Class Members or Class Members' attorneys or third parties have (a) paid to Defendants and/or their hospitals monies which Defendants were precluded from seeking, and/or (b) paid to Defendants or their hospitals monies in amounts greater than Defendants or their hospitals were entitled, and/or (c) paid to Defendants or their hospitals monies to which Defendants or their hospitals were no longer entitled to recover. Further, Defendant MRA has deceptively demanded payment of debts which it was not entitled to claim or obtain payment upon because it was/is not bonded in the State of Texas. Plaintiff seeks the return of all monies obtained arising from the unlawful demands of MRA.

54.     Plaintiff on behalf of the proposed Classes seeks: declaratory relief finding Defendants' actions in violation of Texas law; injunctive relief halting Defendants' practices; restitution for monies obtained by Defendants from Class Members or third parties and for which Defendants were not entitled to obtain;  restitution for monies obtained by Defendants

from Class Members or third parties in amounts which exceeded Defendants' rights of recovery; restitution from Defendant MRA for all monies obtained arising from its demands; other compensatory damages; statutory damages; trebling of damages; attorneys' fees; and costs.

55.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff brings this action on her own behalf and all others similarly situated as previously identified by the two proposed classes.

56.     The particular members of each proposed Class are capable of being determined without difficult managerial or administrative problems. The members of each proposed Class are readily identifiable from the information and records in the possession or control of Defendants. Defendants and through their hospitals already possess the name of each Class Member, address of each Class Member, the telephone number of each Class Member, and the balance asserted for each Class Member. Further, Defendants and through their hospitals already possess information regarding the health insurance carriers with whom the hospitals have contracts, the reimbursement rates for charges pursuant to those contracts, and the hospitals' own charge lists for comparison of the balance to the reimbursement rates.

57.     The Class consists of hundreds of individual members and is, therefore, so numerous that individual joinder of all members is impractical.

58.     There are questions of law and fact common to the Class.  The principal common factual issues include, but are not limited to:

    (a)     Whether Defendants and/or their respective hospitals have set charges for medical services provided;

    (b)     Whether Defendants and/or their respective hospitals entered into contractual agreements with various health insurance carriers providing, among other

things, that health insurance claims should be promptly submitted to the carriers for payment;

(c)     Whether Defendants and/or their respective hospitals entered into contractual agreements with various health insurance carriers providing, among other things, for the set pricing for reimbursement of charges for medical services;

(d)     Whether Defendants and/or their respective hospitals entered into contractual agreements with various health insurance carriers providing, among other things, that Defendants and / or their respective hospitals are contractually prohibited from seeking payment for covered benefits from other sources, including, seeking payment directly from Class Members, seeking payment from auto insurers, turning bills over to collection, or asserting a claim on an insured's third-party tort claim;

(e)     Whether Defendants and/or their respective hospitals have in place admission screening systems, protocols, and procedures which seek to determine whether a patient has been involved in an automobile accident. Further, whether if it is determined that a patient has been involved in an automobile accident, Defendants have in place systems, protocols, and procedures which falsely identify other parties to include Defendant MRA as the primary insurance. Further, whether even in those situations where a Texas patient has health insurance, Defendants either intentionally do not seek to inquire about such health insurance plans or intentionally omit a patient's health insurance when disclosed;

(f)     Pursuant to those contracts maintained by Defendants or their hospitals with health insurance carriers, whether Defendants have systems, protocols, and procedures which improperly do not submit for payment to health insurance carriers those charges for services rendered to patients who have been identified as involved in third-party liability events;

(g)     Pursuant to those contracts maintained by Defendants or their hospitals with health insurance carriers, whether Defendants sought the payment for covered services to Class Members from contractually precluded sources;

(h)     Pursuant to those contracts maintained by Defendants or their hospitals with health insurance carriers, whether Defendants obtained monies for covered services to Class Members from contractually precluded sources;

(i)     Pursuant to those contracts maintained by Defendants or their hospitals with health insurance carriers, whether Defendants sought the payment for covered services to Class Members for amounts greater than the contractual reimbursement rates;

(j)     Pursuant to those contracts maintained by Defendants or their hospitals with health insurance carriers, whether Defendants obtained monies for covered services to Class Members for amounts greater than the contractual reimbursement rates.

(k)     Whether Defendants or their hospitals failed to timely bill Class Members' insurance plans.

(l)     If Defendants or their hospitals failed to timely bill Class Members' insurance plans, whether Defendants or their hospitals thereafter sought the payment of monies for covered services through assignments of interests or liens and obtained monies for covered services;

(m)     Whether Defendants and/or their hospitals obtained monies to which they were not entitled;

(n)     Whether Defendants should be enjoined or penalized for their improper and unlawful billing practices as described above;

(o)     Whether Defendant MRA was or is bonded with the State of Texas as a debt collector; and

(p)     Whether Defendant MRA obtained monies on behalf of itself or its hospitals arising out of MRA's demands to Class Members.

59.     The principal common legal issues include, but are not limited to, whether Defendants' actions as determined by the common factual questions establish:

(a)     Whether Defendants' have been found to have violated Texas law as asserted in the Plaintiff's causes of action and whether declaratory relief is appropriate;

(b)     Whether Defendants' actions should be enjoined;

(c)     Whether Defendants' should be required to pay restitution for their obtaining of monies from prohibited sources or in amounts greater than allowed;

(d)     Whether Defendants' actions allow for restitution to the Class Members;

(e)     Whether Defendants' actions allow for damages (compensatory, statutory, and trebling of) for the Class Members;

(f)     Whether the Class Members are entitled to an award of attorneys' fees;

(g)     Whether the Class Members are entitled to an award of costs.

60.     The Class Members within the proposed classes are united by a community of interests concerning appropriate declaratory and equitable relief; restitution; damages, and other relief available to redress the Defendants' wrongful conduct.

61.     Plaintiff is a member of the proposed classes and her claims are typical of the classes she seeks to represent.

62.     Plaintiff will fairly and adequately represent the claims of the Classes, and she will protect the interests of each member of the Classes without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Classes generally.

63.     Plaintiff has retained attorneys experienced in litigation of class and representative claims and in the area of consumer protection litigation who have agreed to and will responsibly and vigorously advocate on behalf of the Classes as a whole.

64.     Without class certification, the prosecution of separate actions by individual members of the Classes would be impracticable and financially difficult, and create a risk of repetitive, inconsistent and varying adjudications. This would have the effect of establishing incompatible standards of conduct for Defendants, discouraging the prosecution of meritorious claims, and/or result in adjudication which would be dispositive of the interests of other Class Members not parties to the adjudication, or otherwise substantially impair the ability of Class Members to protect their rights and interests.

65.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making the award of equitable relief, declaratory relief, and restitution flowing from declaratory relief appropriate to the Class as a whole.

66.     The questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

67.     The class action procedure is superior to other methods of adjudication, and specifically designed to result in the fair, uniform and efficient adjudication of the claims presented by this complaint. This class action will facilitate judicial economy and preclude the undue financial, administrative and procedural burdens which would necessarily result from a multiplicity of individual actions.

### COUNT I
### (Violation of Texas Finance Code §§ 392.001, *et seq.*)

68.     Plaintiff incorporates the preceding allegations by reference.

69.     Plaintiff and all Class Members are/were consumers pursuant to Tex. Fin Code § 392.001(1).

70.     Defendants are debt collectors pursuant to Tex. Fin. Code § 392.001(6).

71.     Defendant MRA is a third-party debt collector pursuant to Tex. Fin. Code § 392.001(7).

72.     Pursuant to Tex. Fin. Code § 392.101, Defendant MRA as third-party debt collector is required to obtain a surety bond issued by a surety company, a copy of which must be filed with the Texas Secretary of State.  According to the Texas Secretary of State's office website, "Debt Collector Search" at https://direct.sos.state.tx.us/debtcollectors/DCSearch.asp, as of July 9, 2020, Defendant MRA has not obtained a surety bond, and it has not filed a copy of any bond with the Texas Secretary of State.  *See*   Defendant MRA is in violation of Tex. Fin. Code § 392.101, and for each separate act of communication for debt collection, Plaintiff and the Class are entitled to not less than $100 per violation pursuant to Tex. Fin. Code § 392.403(e).  Further, because Defendant MRA made demands upon Class Members' claims when it was not bonded with the

State of Texas, Plaintiff seeks restitution or damages from Defendant MRA in the form of all monies it has obtained arising from its demands/assertions of interest in Class Members' third-party claims.

73.     In attempts to collect a debt from Plaintiff, Class Members, or third-parties liable to Plaintiff and Class Members, Defendants transmitted communications which misrepresented the character, extent, or amount of the debt in violation of Tex. Fin. Code § 392.304(8); Defendants used "any other false representation or deceptive means to collect a debt" in violation of Tex. Fin. Code § 392.304(19); and Defendants used "any other false representation or deceptive means to" obtain "information concerning a consumer" in violation of Tex. Fin. Code § 392.304(19).

74.     Defendants' violations of §§ 392.001, *et seq,* begins with their false assertions of rights of interests in accident-related patient care or third-party liability claims based upon a purported assignment of interests from Plaintiff and Class Members to Defendants or their respective hospitals.   Any assignment of rights from Plaintiff and Class Members to Defendants and their hospitals is limited by the rights the patient has against the responsible third-party.

75.     Pursuant to Texas Civil Practice and Remedies Code § 41.0105, and in a liability claim, the "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." Since 2011, this provision has been interpreted by the Texas Supreme Court to mean those expenses "that have been or must be paid by or for the claimant," and "excludes the difference between such amount and charges the service provider

bills but has no right to be paid." *Haygood v. De Escabedo*, 356 S.W.3d 390, 398, 397 (Tex. 2011).

76.     The Texas Supreme Court has expressly stated that there is a difference between "list" or "full" rates set and charged by a medical provider versus "reimbursement" rates contractually agreed upon between the medical provider and health insurance plans. Accordingly, in those cases where billed medical charges are subject to contractual reimbursement rates between hospitals and health insurance plans, a plaintiff in a liability claim in Texas can assert as compensable damages for medical services only the charges (a) actually paid pursuant to the reimbursement rates or (b) for which the hospital is contractually allowed to receive from the insurer (incurred). Thus, a Texas claimant is not entitled to recover medical charges that a medical service provider is not entitled to be paid.

77.     Because Texas law limits a plaintiff's claim for recoverable medical expenses in those situations where health insurance applies to charges paid or incurred pursuant to the contractual reimbursement rates, a Texas plaintiff's assignment of interests to a Texas hospital for the hospital's independent ability to assert an interest in a plaintiff's third-party liability claim is also limited by Texas Civil Practice and Remedies Code § 41.0105 to only those charges (a) "paid" pursuant to the reimbursement rates or (b) for which the hospital is contractually allowed to receive from the insurer ("incurred"). In that situation, a Texas hospital can assert as a right of assignment only the medical charges that it is entitled to be paid pursuant to the insurance plan.

78.     In this case, Plaintiff and all Class Members are/were subject to Texas Civil Practice and Remedies Code § 41.0105, and could only assign to Defendants and/or their hospitals the right to recover from a third-party liability claim only those charges (a) "paid" pursuant to the

reimbursement rates established by the insurer or (b) those reimbursement rates for which the hospital is contractually allowed to receive from the insurer (incurred).

79.     All assignments from Plaintiff and Class Members to Defendants were limited to the recovery of monies for amounts (a) "paid" pursuant to the reimbursement rates established by insurer contracts with Defendants and/or their hospitals or (b) those reimbursement rates for which the Defendant and/or their hospitals were contractually allowed to receive from the insurer (incurred).

80.      Defendants violated Tex. Fin. Code § 392.304(8) through three primary scenarios, all as a result of the limited assignments from Plaintiff and the Class Members. **First**, Defendants falsely asserted rights to claims for reimbursement from contractually precluded sources. **Second**, Defendants falsely asserted higher "list" amounts which exceeded the "reimbursement" contractual rates to which they were only entitled. **Third**, when Defendants and/or their hospitals failed to timely submit Plaintiff's and Class Members' charges for reimbursement to the health insurer's, Plaintiffs and Class Members were relieved from liability altogether, which substantially divested Defendants rights in their assignments or liens.

81.     **First, Defendants falsely sought monies from precluded sources**. Upon information and belief, the health insurance contracts covering Plaintiff's and the Class Members' services from Texas hospitals mandated that reimbursement for those services would be pursuant to those contracts with the health insurance companies. The contracts between health insurance companies and those hospitals providing services to Plaintiff and Class Members precluded Defendants and their hospitals from seeking reimbursement from

sources other than pursuant to the plans, with such precluded sources consisting of: Plaintiff and Class Members (other than pursuant to the plans); Plaintiff's and Class Members' attorneys; Plaintiff's and Class Member's third-party liability claims; Plaintiff's and Class Members' no-fault insurance policies/companies; third-party tortfeasors; third-party tortfeasor's liability insurance companies; or any other precluded source.  Further, Defendants falsely contend(ed) that the medical services provided pursuant to accidents are not covered by health insurance plans.

82.     Further Texas Civil Practice and Remedies Code § 146.002(a) mandates a health care service provider to bill the issuer of a patient's health benefit plan if required or authorized to directly bill. Accordingly, § 146.002(a) precludes the assertion of an assignment if health insurance coverage is available.

83.     When Defendants made demands against Plaintiff's and Class Members' third-party liability claims or other precluded sources, Defendants made express statements and/or material omissions which (a) misrepresented the character, extent, or amount of such consumer debt in violation Tex. Fin. Code § 392.304(8), and (b) used any other false representation or deceptive means to collect a debt in violation of Tex. Fin. Code § 392.304(19)

84.     **Second, Defendants falsely sought amounts for "list" amounts which exceeded the contractual "reimbursement" rates.** Upon information and belief, the health insurance contracts covering Plaintiff's and the Class Members' services from Texas hospitals mandated that reimbursement for those services would be pursuant to contractually set "reimbursement" rates. These contractually set rates or obligations of reimbursement pursuant

to the health insurance plans on behalf of Plaintiff and the Class Members were less (or would be less) than the amounts for the "list" charges (balances) asserted by Defendants and their hospitals against Plaintiff's and Class Members' third-party liability claims. Because Plaintiff and the Class Members could only recover as compensatory damages for medical expenses the recoverable medical expenses based on the reimbursement rates, Plaintiff and Class Members' assignment to Defendants and/or their hospitals were also limited by Texas Civil Practice and Remedies Code § 41.0105. Further, Defendants falsely contend(ed) that the medical services provided pursuant to accidents are not covered by health insurance plans. Accordingly when Defendants or their hospitals asserted balances based on those hospitals' "list" charges and not the contractually agreed upon "reimbursement," the amounts asserted by Defendants were false because they exceed(ed) the contractual rates for reimbursement. As such, Defendants made express statements and/or material omissions which (a) misrepresented the character, extent, or amount of such consumer debt in violation Tex. Fin. Code § 392.304(8), and (b) used any other false representation or deceptive means to collect a debt in violation of Tex. Fin. Code § 392.304(19).

85.    **Third, Defendants falsely sought amounts to which they or their hospitals could no longer recover following the untimely or failure to submit charges to insurance carriers.** This situation actually involves the loss of Defendants' ability to seek reimbursement from those health insurance plans/contracts covering Plaintiff's and the Class Members, and thereby divesting Defendants of the rights in assignments or statutory liens. Upon information and belief, each contract between a health insurance provider and a Texas hospital covering reimbursement for Class Members' services mandated a time period in

which reimbursement had to be sought from the plan. When Defendants and their hospitals do not submit Plaintiff's and Class Members' covered services to those plans in a timely manner, Defendants are contractually foreclosed or barred from seeking reimbursement.

86.     Further Texas Civil Practice and Remedies Code § 146.002(a) mandates a health care service provider to bill the issuer of a patient's health benefit plan if required or authorized to directly bill. Section 146.002(b) mandates such billing to occur by the date provided in the contract or if no contract then by the 11th month after the date the services are provided. If the health care service provider does not bill the health benefit plan as required by § 146.003, pursuant to Texas Civil Practice and Remedies Code § 146.002(a), the health care service provider "may not recover from the patient any amount that the patient would have been entitled to receive as payment or reimbursement under a health benefit plan or that that patient would not otherwise have been obligated to pay had the provider complies with § 146.002." As such, once the medical provider fails to timely bill a patient's insurance company, the medical provider cannot recover any monies from the patient except what the patient would have been required to pay had the insurance been paid. Once the medical provider can no longer recover from the patient, Texas Civil Practice and Remedies Code § 41.0105 bars the patient/plaintiff's ability to recover those medical expenses from a third-party. As such, once the medical provider fails to timely bill a patient's account to the insurance company, any assignment from the patient to the medical provider for that provider's recovery against a third-party claim would be reduced only to what the patients' copay or deductible would be. Further, Texas Property Code § 55.004(d)(5) provides that a statutory hospital lien "does not cover . . . charges for which recovery is barred under Section 146.003, Civil Practice and Remedies

Code." Thus, failure to bill insurance plans divests Defendants and hospitals of their rights in assignments and liens.

87.     In some situations alleged herein, Defendants and/or their hospitals failed to timely bill Plaintiff's and Class Members' charges to their respective health insurance plans. By operation of contract or Texas Civil Practice and Remedies Code §§ 146.002 and 146.003, Defendants and/or their hospitals lost their ability to recover from Plaintiff or the Class Members those payments or reimbursements, leaving only the amounts Plaintiff and the Class Members may have had to pay if the insurers were timely billed. Once that occurred, Plaintiff's and Class Members' assignments to Defendants and/or their hospitals were essentially extinguished because Defendants and/or their hospitals could no longer recover any monies from Plaintiff and the Class Members. Further, any liens asserted by Defendant and their hospitals were also extinguished pursuant to Texas Property Code 55.004(d)(5). Further, Defendants falsely contend(ed) that the medical services provided pursuant to accidents are not covered by health insurance plans. When Defendants made demands against Plaintiff's and Class Members' third-party liability claims seeking monies to which they were no longer entitled due to the failure to timely bill insurers, Defendants made express statements and/or material omissions which (a) misrepresented the character, extent, or amount of such consumer debt in violation Tex. Fin. Code § 392.304(8), and (b) used any other false representation or deceptive means to collect a debt in violation of Tex. Fin. Code § 392.304(19).

88.     Finally, Defendants' actions and scheme further violates Tex. Fin. Code § 392.304(19), in that Defendants used false representations or deceptive means to "obtain

information concerning" Plaintiffs and Class Members, who are consumers. Defendants falsely asserted their right of interest in Plaintiff's and Class Members' potential third-party liability claim and further sought actual information about those claims to include the status of the claims, information about any settlements, information in regard to payouts of those settlements, and other information. These are distinct and separate violations from the false representations themselves.

89.     Pursuant to Tex. Fin. Code § 392.403(a)(1), Plaintiff and the Class Members are entitled to injunctive relief to further prevent or restrain a violation of §§ 392.001, *et al.*

90.     Pursuant to Tex. Fin. Code § 392.403(a)(2), Plaintiff and the Class Members are entitled to actual damages in the form of the monies obtained by Defendants for which they were precluded from obtaining from sources other than health insurance plans; or for monies obtained by Defendants for amounts greater than contracted reimbursement rates; or for monies obtained after Defendants and/or their hospitals lost the rights to obtain because they failed to timely bill insurers.  Further, Class Members are entitled to a return of all money obtained by Defendant MRA or arising out of its demands as it was seeking to collect debts in Texas for which it had no authority to collect.

91.     Pursuant to Tex. Fin. Code § 392.403(e), Plaintiff and each Class Member are entitled to not less than $100 for each violation of Tex. Fin. Code § 392.101 by Defendant MRA.

92.     Pursuant to Tex. Fin. Code § 392.403(b), Plaintiff and the Class Members are further entitled to an award for costs of the action and reasonable attorney's fees.

## COUNT II
### (Violation of Texas Deceptive Trade Practices Act)

93.     Plaintiff incorporates the preceding allegations by reference.

94.     Plaintiff and the Class Members are consumers as defined by Texas Business and Commerce Code, Chapter 17, Subchapter E, §§ 17.41 *et seq*, Texas Deceptive Trade Practices (hereinafter "TDTPA") § 17.45(4). Plaintiff and the Class Members sought services from Defendant and/or their hospitals as defined by TDTPA § 17.45(2) and for which Defendants and/or their hospitals asserted "list" prices or charges. The deceptive conduct complained of herein involves Defendants' deception and scheme for the recoupment of payment of charges for the underlying medical services provided. The scheme is simple: circumvent the reimbursement rates and limitations contractually agreed by asserting an assignment of interest in a third-party liability claim and wherein Defendants (1) make false and deceptive statements about their interests and/or (2) fail to disclosure material facts about their interest which would reveal the deception and untruthfulness of their acts. Further, Defendants have asserted liens which have been substantially extinguished by their or their hospitals' failures to timely bill insurance plans. Defendants' scheme involves not only deceptive and false communications to Plaintiff and the Class Members but others as well who have an interest or stake in Plaintiff's and Class Members' liability claims.  For Defendant MRA, the scheme includes its deceptive conduct of seeking the collection of debts for which it is not entitled by law to collect.

95.     Defendants implement a scheme of deception beginning with the admission process to Texas hospitals and wherein they have in place admission screening systems, protocols, and procedures which seek to determine whether a patient has been involved in an automobile

accident. If it is determined that a patient has been involved in an automobile accident or has a liability claim, Defendants have in place systems, protocols, and procedures which list Defendant MRA as the primary insurance. Even in those situations where a Texas patient has health insurance, Defendants either intentionally do not seek to inquire about such health insurance plans or omit a patient's health insurance when disclosed. Further, Defendants falsely contend(ed) that the medical services provided pursuant to accidents are not covered by health insurance plans.

96.     Thereafter, Defendants further implement their scheme by false representations and/or material omissions in written communications.

97.     Pursuant to Tex. Fin. Code § 392.403(e), all violations alleged *supra* pursuant to Tex. Fin. Code § 392.001 *et seq.* are violations of TDTPA, §§ 17.41 *et seq*. and are restated herein as if stated in full.  Defendant MRA is further liable pursuant to Tex. Fin. Code § 392.403(e) for its deceptive conduct in not being bonded with the State of Texas for the collection of debts, thereby allowing for a separate TDTPA violation pursuant to TDTPA § 17.46(a) and §17.46(b)(5) because it falsely represents that its agreements with Texas hospitals confers upon it the ability to collect debts in Texas when it knows it is not bonded in Texas and further because it fails to disclose that material information.

98.     Further, Defendants' actions amount to false, misleading or deceptive acts or practices in violation of TDTPA § 17.46(a) and §17.46(b) in that:

   a.  Defendants are contractually prohibited from seeking monies from Plaintiff's and
       Class Members' third-party liability claims, making Defendants' representations
       of any rights of interests in such claims to be falsely representing that services have
       approval and characteristics which they do not have or that Defendants have
       approval, status, affiliation or connection which Defendants do not have (TDTPA
       § 17.46(b)(5));

b. Defendants are limited by the assignment from Plaintiff and Class Members to only being able to recover monies from Plaintiff's and Class Members' third-party liability claims for the amounts to which Defendants and/or their hospitals are owed pursuant to the contractual insurance "reimbursement" rates, making Defendants' representations of any right in excess of those rates to be falsely representing that services have approval and characteristics which they do not have or that Defendants have approval, status, affiliation or connection which Defendants do not have (TDTPA § 17.46(b)(5));

c. Defendants are limited by the assignment from Plaintiff and Class Members and upon the failure to timely bill Plaintiff's and Class Members health insurance lose the ability to recover from Plaintiff and the Class Members amounts in excess of potential co-pays and/or deductibles, making Defendants' representations of any right of recovery lost by the failure to bill as falsely representing that services have approval and characteristics which they do not have or that Defendants have approval, status, affiliation or connection which Defendants do not have (TDTPA § 17.46(b)(5));

d. Defendants have asserted liens against Class Members' third-party claims, which upon the failure to timely bill Class Members' health insurance become substantially extinguished, making Defendants' representations of any right of recovery lost by the failure to bill as falsely representing that services have approval and characteristics which they do not have or that Defendants have approval, status, affiliation or connection which Defendants do not have (TDTPA § 17.46(b)(5));

e. Defendants made false representations that health insurance coverage does not apply to medical treatment arising from accidents, which falsely represents that services have approval and characteristics which they do not have or that Defendants have approval, status, affiliation or connection which Defendants do not have (TDTPA § 17.46(b)(5)).

f. Defendants are contractually prohibited from seeking monies from Plaintiff's and Class Members' third-party liability claims, making Defendants' representations regarding any ability to claim recovery pursuant to a purported assignment to be falsely representing that an agreement (the assignment) confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (TDTPA § 17.46(b)(12));

g. Defendants are limited by the assignment from Plaintiff and Class Members to only being able to recover monies from Plaintiff's and Class Members' third-party liability claims for the amounts to which Defendants and/or their hospitals are owed pursuant to the contractual insurance "reimbursement" rates, making Defendants' representations of any right in excess of those rates to be falsely representing that an agreement (the assignment) confers or involves rights, remedies, or obligations

which it does not have or involve, or which are prohibited by law (TDTPA § 17.46(b)(12));

h.  Defendants are limited by the assignment from Plaintiff and Class Members and upon the failure to timely bill Plaintiff's and Class Members health insurance lose the ability to recover from Plaintiff and the Class Members amounts in excess of potential co-pays and/or deductibles, making Defendants' representations of any right of recovery lost by the failure to bill as falsely representing that an agreement (the assignment) confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (TDTPA § 17.46(b)(12)); and

i.  Defendants made false representations that health insurance coverage does not apply to medical treatment arising from accidents, which falsely represents that an agreement (the assignment) confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (TDTPA § 17.46(b)(12)).

99.     The claims made herein do not involve the underlying medical services provided to Plaintiff and the Class Members, and the claims made herein do not involve Defendants' actions in the rendering of professional services as defined by TDTPA § 17.49 (c) and made applicable to entities pursuant to TDTPA § 17.49(d). Further, the claims made herein involve express misrepresentations of material fact that cannot be characterized as advice, judgment, or opinion pursuant to TDTPA § 17.49(c)(1).

100.     Defendants' actions further amount to an unconscionable action or course of action.

101.     On behalf of the Class Members, Plaintiff asserts actual damages in the form of the monies obtained by Defendants for which they were precluded from obtaining from sources other than health insurance plans; or for monies obtained by Defendants for amounts greater than contracted reimbursement rates; or for monies obtained after Defendants and/or their hospitals lost the rights to obtain because they failed to timely bill insurers.  On behalf of Class Members, Plaintiff seeks from Defendant MRA all monies obtained arising from its

demand/communications. Further, pursuant TDTPA § 17.50(b)(3), Plaintiff seeks orders from the Court restoring to Class Members any money which was acquired in violation of TDTPA §§17.41, *et seq*.

102.    Further, Defendants' actions were knowingly committed, and allow for a finder of fact to award not more than three times the amount of economic damages pursuant to TDTPA § 17.50(b).

103.    Pursuant to TDTPA § 17.50(b)(2), Plaintiff and the Class Members seek an order enjoining Defendants' unlawful actions;

104.    Pursuant to TDTPA § 17.50(d), Plaintiff and the Class Members are entitled to court costs and reasonable and necessary attorneys' fees.

105.    Plaintiff and the Class Members are further entitled to prejudgment interest applicable to past damages or monies improperly obtained.

106.    Plaintiff and the Class Members do not seek exemplary damages under this cause of action.

## COUNT III
## (Fraud)

107.    Plaintiff incorporates the preceding allegations by reference.

108.    Defendant MRA falsely communicated to Plaintiff and Class Members that it had the legal right to collect the debts communicated by it or it withheld material information that it was not bonded with the State of Texas.

109.    Defendants are contractually prohibited from seeking monies from Plaintiff's and Class Members' third-party liability claims.  Further Texas law mandates that Defendants and/or their hospitals bill Plaintiff's and Class Members' insurance plans.  When Defendants

made demands against Plaintiff's and Class Members' third-party liability claims or other precluded sources, Defendants made false statements regarding their legal right to seek monies from Plaintiff's and Class Members' third-party liability claims. Further, Defendants omitted material information that any assignments or liens were subject to their requirements not to seek such monies from sources other than the insurance plans.  Defendants' conduct amounted(s) to fraud.

110.      Defendants are limited by the assignment from Plaintiff and Class Members to only being able to recover monies from Plaintiff's and Class Members' third-party liability claims for the amounts to which Defendants and/or their hospitals are owed pursuant to the contractual insurance "reimbursement" rates.  When Defendants asserted the "list" charges (balances) against Plaintiff's and Class Members' third-party claims, Defendants made false claims.  Further, Defendants omitted material information about the limitations on their assignments and liens by not stating the list prices were subject to contractual reimbursement rates. Defendants' conduct amounted(s) to fraud.

111.      Defendants are limited by the assignment from Plaintiff and Class Members, and upon the failure to timely bill Plaintiff's and Class Members' health insurance, Defendants lose the ability to recover from Plaintiff and the Class Members amounts in excess of potential co-pays and/or deductibles.  Further, any liens applicable to those charges are also affected by the failure to timely bill Plaintiff's and Class Members' health insurance.  When Defendants made demands against Plaintiff's and Class Members' third-party liability claims seeking monies to which they were no longer entitled due to the failure to timely bill insurers, Defendants made false statements about the nature of the assignments or liens.  Further

Defendant omitted material information about the failure to bill the insurance plans and the limitations on the assignments or liens.  Defendants' conduct amounted(s) to fraud.

112.     Defendants made false representations that health insurance coverage does not apply to medical treatment arising from accidents.  Defendants' conduct amounted(s) to fraud.

113.     As direct and proximate result of Defendants' fraud, Class Members paid directly or through their third-party claims monies to Defendants or Defendants' hospitals to which Defendants or their hospitals were not entitled to receive.

114.     Plaintiff and the Class are entitled to monetary damages in the form of the monies obtained by Defendants for which they were precluded from obtaining from sources other than health insurance plans; or for monies obtained by Defendants for amounts greater than contracted reimbursement rates; or for monies obtained after Defendants and/or their hospitals lost the rights to obtain because they failed to timely bill insurers.  Further, Plaintiff seeks the return of monies obtained as a result of Defendant MRA's fraudulent conduct of collecting debts for which it was not legally allowed to collect in Texas.

## **JURY DEMAND**

115.     Plaintiff, on behalf of herself and the Class Members, demands a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all Class Members, respectfully prays for judgment against the Defendants as follows:

(a)     For an Order certifying that this action may be maintained as a class action and appointing Plaintiff and her counsel to represent the class;

(b)     For a declaration that Defendants' actions violate Texas law as alleged herein;

(c)     For restitution flowing from the declaratory relief that Defendants have obtained monies to which they were precluded from obtaining as a matter of contract or extinguished assignments and liens;

(d)     For restitution flowing from the declaratory relief that Defendant MRA had no authority to collect a debt in Texas;

(e)     For a permanent injunction halting Defendants' unlawful acts;

(f)     For actual damages for monies improperly obtained by Defendants and for monies in amounts greater than Defendants were entitled to obtain;

(g)     For actual damages from Defendant MRA that it had no authority to collect a debt in Texas;

(h)     For other statutory damages;

(i)     For pre-judgment interest as provided by law;

(j)     For post-judgment interest as provided by law;

(k)     For an award to Plaintiff and the Class Members of their reasonable attorneys' fees;

(l)     For an award to Plaintiff and the Class Members of their costs and expenses of this action; and

(m)     For such other and further relief as the Court may deem necessary and proper under Texas law.

Respectfully submitted,

/s/ *JIM WYLY*

_____

JIM WYLY
Texas State Bar No. 22100050
SEAN ROMMEL
Texas State Bar No. 24011612
WYLY~ROMMEL, PLLC
4004 Texas Boulevard
Texarkana, Texas  75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Facsimile)
jwyly@wylyrommel.com
srommel@wylyrommel.com

F. Jerome Tapley (to apply *pro hac vice*)

Ryan Lutz (to apply *pro hac vice*)
Brett Thompson (to apply *pro hac vice*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205
Tel.:    (205) 328-2200
Fax:     (205) 324-7896
jtapley@corywatson.com
rlutz@corywatson.com
bthompson@corywatson.com

ATTORNEYS FOR PLAINTIFF