**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| BEVERLY WILLIAMS and AMY JOHNSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § § | CIVIL ACTION NO.  5:20-CV-00123-RWS-CMC |
| Plaintiffs, | § § § | |
| v. | § § § | |
| STEWARD HEALTH CARE SYSTEM, LLC and MEDICAL REIMBURSEMENTS OF AMERICA, | § § § § § | |
| Defendants. | § § | |

## <u>ORDER</u>

The above-entitled and numbered civil action was referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636.  On December 16, 2021, the Magistrate Judge issued a Report and Recommendation, recommending Defendants' Motion to Dismiss Second Amended Class Action Complaint (Docket No. 66) and Defendant Medical Reimbursements of America's ("MRA") Rule 12(b)(1) Motion to Dismiss Plaintiffs' Claims Regarding Non-Party Hospitals for Lack of Subject Matter Jurisdiction (Docket No. 95) be denied. Docket No. 118.

Defendant Steward Health Care System, LLC ("Steward") and Defendant MRA each filed separate objections.  *See* Docket Nos. 121, 122.  Plaintiff Beverly Williams and Plaintiff Amy Johnson filed responses to the objections.  Docket Nos. 125, 126.  The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

Plaintiffs bring this putative class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and two proposed classes (the "Unauthorized Billing Class" and the "Excess Billing Class") against Defendants.  Second Amended Complaint ("SAC"), Docket No. 64 ¶¶ 16, 88.  According to Plaintiffs, this case is an individual and putative class action arising from Defendants' scheme to deceptively collect unauthorized and illegal payments for hospital treatment resulting from motor vehicle accidents.  In Count I, Plaintiffs allege violation of Texas Finance Code § 392.001 *et seq. Id*. ¶¶ 101–111.  In Count II, Plaintiffs allege violation of the Texas Deceptive Trade Practices Act.  *Id*. ¶¶ 112–127.  In Count III, Plaintiffs assert fraud claims. *Id*. ¶¶ 128–136.  In Count IV, Plaintiffs allege mail and wire fraud in violation of the Racketeer Influenced and Organized Crime Act ("RICO"), 18 U.S.C. §§ 1961–1968 and 18 U.S.C. § 1962 (c) and (d).  *Id*. ¶¶ 137–150.

## I.     MOTIONS TO DISMISS

In a combined motion, Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants state the Court must decline to exercise subject matter jurisdiction under the local controversy exception of the Class Actions Fairness Act ("CAFA").  Recognizing Plaintiffs have also alleged in their SAC a federal RICO claim separate and apart from CAFA, Defendants argue the purported RICO claim fails because Plaintiffs have failed to state a claim under 18 U.S.C. § 1961, *et seq.*  Specifically, Defendants argue that Plaintiffs' RICO claim fails because Plaintiffs have not made adequate allegations of predicate acts and Plaintiffs have failed to allege any injury that resulted from any alleged RICO violations. Defendants request the Court dismiss the RICO claim pursuant to Federal Rules of Civil Procedure

12(b)(6) and 9(b).  According to Defendants, without a plausible RICO claim, Plaintiffs are left with only CAFA as a potential basis for jurisdiction, meaning the Court does not have jurisdiction over this case.  Therefore, Defendants assert Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(1).

Defendant MRA separately moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss for lack of subject matter jurisdiction.  MRA requests the Court dismiss Plaintiffs' class claims asserted on behalf of patients at non-party hospitals where Plaintiffs were never treated and never billed.  According to MRA, Plaintiffs do not have Article III standing to pursue these claims.[1] In their response, Plaintiffs state they have Article III standing to pursue their individual claims against MRA, and neither Plaintiff is attempting to use claims of absent class members to establish their own standing.  Thus, according to Plaintiffs, the cases relied upon by MRA are distinguishable.  Plaintiffs argue issues with regard to class claims should be resolved at the class certification stage.

## II.   REPORT AND RECOMMENDATION

On December 16, 2021, the Magistrate Judge issued a 97-page Report and Recommendation ("R&R"), recommending Defendants' motions to dismiss be denied.  Docket No. 118.  First, the Magistrate Judge found Defendants have not met their burden to prove the

---

[1] MRA previously raised Plaintiffs' lack of Article III standing to sue on behalf of a class of patients at non-Steward hospitals in a motion for a protective order seeking to preclude discovery regarding non-party hospitals.  *See* Docket No. 68.  In opposition, Plaintiffs argued that (i) MRA should have filed a motion to dismiss instead of a motion for protective order if it believed Plaintiffs lacked Article III standing to assert claims on behalf of patients of non-party hospitals, (ii) discovery about non-party hospitals was proper because the SAC included live allegations about these hospitals and (iii) MRA had not made the requisite showing of burden to warrant a protective order.  *See* Docket No. 84.  The Magistrate Judge stated at the hearing that the Court intended to deny the motion for protective order, but did not expressly address the Article III issue.  *See* Docket No. 93.  Accordingly, MRA filed its current Rule 12(b)(1) motion to dismiss.

local controversy exception to CAFA jurisdiction applies.   Therefore, the Court recommended Defendants' combined Rule 12(b)(1) motion be denied.   R&R at 48.

Second, turning to Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' RICO claim, the Magistrate Judge first found that, at this preliminary stage, the pleadings suffice to withstand Defendants' Rule 12(b)(6) challenge as to Plaintiffs' allegations of injury and proximate cause. *Id*. at 51–57.  Next, the Magistrate Judge found that Plaintiffs have pleaded Defendants' alleged predicate acts of mail and wire fraud with sufficient particularity in compliance with Rule 9(b). *Id.* at 57–62.  Finally, the Magistrate Judge found that Plaintiffs' allegations sufficiently allege continuity of racketeering activity.  *Id.* at 62–66. The Magistrate Judge recommended Defendants' combined Rule 12(b)(6) motion be denied.  *Id.* at 66.

Third, the Magistrate Judge considered MRA's separate Rule 12(b)(1) motion to dismiss Plaintiffs' class claims asserted on behalf of patients at non-party hospitals where Plaintiffs were never treated and never billed, finding it without merit.  After setting forth the parties' assertions and the applicable law, including an in-depth discussion of the cases relied upon by MRA, the Magistrate Judge discussed additional cases within the Fifth Circuit illustrating the "tension" in the case law in this specific area of Article III standing.  *Id*. at 83–93. The Magistrate Judge concluded as follows:

> . . . According to Plaintiffs, the unchallenged allegations of the SAC control, and following appropriate discovery, Rule 23 will permit any pertinent challenge as to whether Plaintiffs are appropriate class representatives. The Court agrees.

> As the District Court for the Western District of Texas recently held:

>> [W]hile the Court agrees that a plaintiff must "demonstrate standing for each claim he seeks to press," and that the fact that 'a suit may be a class action . . . adds nothing to the question of standing,' the Court agrees with Plaintiff that no standing issue exists here. Defendant has not challenged Plaintiff's standing to bring suit on ***its own*** behalf, and the Court does not foresee any reason such a

challenge would be successful. Instead, Defendant challenges whether Plaintiff has standing "to bring contract claims under the laws of California, or Colorado, or Connecticut—or anywhere else." As Plaintiff argues, "Rule 23, not Article III standing, is the better framework for analyzing differences between the named plaintiff and the absent class members."

*Indep. Barbershop, L.L.C. v. Twin City Fire Ins. Co*., 499 F.Supp.3d 331, 337 (W.D. Tex. 2020) (emphasis original) (citations omitted); *see also Shular v. LVNV Funding L.L.C.,* Civil Action No. H-14-3053, 2016 WL 685177, at *9 (S.D. Tex. Feb. 18, 2016) (quoting WRIGHT & MILLER, FED. PRAC. & PROC. § 1785.1, at 141 (3d ed.)) ("As long as the representative parties have a direct and substantial interest, they have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.").

Here, neither in its motion for protective order nor in its current motion to dismiss, nor at the hearings on September 9 or October 21, did MRA dispute Plaintiffs' Article III standing to bring their own claims. *See, e.g.* Docket Entry # 116 at 37:19-22 ('We do agree that if they're ultimately able to prove their allegations, they would have standing both on an individual and a class basis with respect to Steward and the insurance plans that they have, but nothing further.'). The Court finds Plaintiffs have adequately pleaded Article III standing against MRA for its conduct. Because Plaintiffs have individual standing for their own claims, the Court agrees with Plaintiffs that the cases relied upon by MRA are distinguishable.

Considering the "tension" in the prior cases over whether differences among class members is a matter of Article III standing at all or whether it goes to the propriety of class certification, and further considering the most recent opinions from within this circuit as well as the allegations involved in this case, the Court recommends MRA's Rule 12(b)(1) motion to dismiss be denied. The Court finds Rule 23, not Article III standing, is the better framework for analyzing differences between the named Plaintiffs and the absent class members. *Indep. Barbershop,* 499 F. Supp. 3d at 337.

*Id.* at 94–96 (internal footnotes omitted).

## III.   OBJECTIONS

### A. Steward's Objections[2]

---

[2] In its separate objections to the R&R on MRA's Rule 12(b)(1) motion to dismiss regarding non-party hospitals for lack of subject matter jurisdiction, MRA states in a footnote that it agrees with Steward's objections to the R&R. Docket No. 122 at 1 n.1 (asserting Plaintiffs' RICO claim against MRA should be dismissed for the same reasons).

In its objections, Steward first asserts the Magistrate Judge failed to properly scrutinize the SAC's continuity allegations.  Docket No. 121 at 1–2.  According to Steward, "a court should not deem continuity sufficiently pleaded based on sporadic acts of alleged mail or wire fraud without allegations of independent facts supporting continuity." *Id.* at 2.  Relatedly, Steward objects to the Magistrate Judge's legal conclusions that Plaintiffs sufficiently pleaded continuity—specifically a "specific threat" of repeated racketeering activity or that the activity is Steward and MRA's "regular way of doing business"—and thus that Plaintiffs sufficiently pleaded RICO's "pattern" element.  *Id.* at 6–8.  Steward further argues the Magistrate Judge erred in finding the SAC sufficiently pleaded the 13 predicate acts of mail or wire fraud.  *Id.* at 2–5.  Steward further asserts the Magistrate Judge erred in determining that Williams need not have relied on allegedly false statements when signing the releases and when depositing $500 in trust.  *Id.* at 5–6.

Finally, Steward generally objects to the Magistrate Judge's following legal conclusions: "(1) Johnson was injured, as Johnson is a Medicaid recipient and Plaintiffs do not plead facts showing Johnson was entitled to receive funds from Esurance; (2) Plaintiffs suffered damage to 'business or property'; (3) specific intent was sufficiently alleged as to any predicate act; (4) the SAC sufficiently identified the particular Defendant alleged to have taken each action and did not engage in prohibited 'group pleading'; (5) Plaintiffs' damages were concrete and not speculative; and (6) Plaintiffs have RICO standing." *Id.* at 8 (citations omitted).  Steward urges the Court to "reject the R&R and Plaintiffs' attempt to take a small set of communications regarding two patients and spin them into a RICO cause of action and instead dismiss Plaintiffs' RICO cause of action with prejudice." *Id.*

In response, Plaintiffs generally argue as follows:

Defendants' motion to dismiss Plaintiffs' RICO claims was conclusory and focused on a few paragraphs in Plaintiffs' complaint. Now that the Magistrate Judge has

issued a thorough analysis of Plaintiffs' well-pleaded allegations and recommended denial, Steward uses its objection as a pretext to balloon its initial motion to dismiss into numerous arguments it never made beforehand. All of these new arguments are waived. *See Firefighters' Retirement Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 559 (5th Cir. 2018) (argument waived by raising for first time in objection to magistrate judge's report and recommendation) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994)).

Docket No. 126 at 1.

Substantively, Plaintiffs argue the Magistrate Judge correctly analyzed the SAC's continuity allegations; correctly found the SAC sufficiently pleaded continuity—namely, that Plaintiffs sufficiently alleged a "specific threat of repetition" concerning their business practice of seeking unauthorized payments arising from motor vehicle accidents; and correctly found the SAC sufficiently pleaded predicate acts of mail and wire fraud.  According to Plaintiffs, "Steward provides no support whatsoever for its remaining objections." *Id.* at 8.  Plaintiffs contend the Court should overrule them for the following reasons:

> (1) Plaintiff Johnson's own PIP proceeds were alleged as "monies from her own PIP policy which ***would have otherwise been payable to her or other medical providers on her behalf***", SAC, ¶ 73 (emphasis added); (2) Plaintiff Williams' Johnson's [sic] PIP proceeds amounted to her RICO "property" harmed by Steward's actions; (3) the Court did not have to address Defendants' intent argument raised for the first time on reply, but nonetheless did, R&R, at 58–62; (4) the SAC gives each Defendant sufficient notice of the claims against them, including with thorough allegations of predicate acts that satisfy Rule 9(b) (*see* R&R, 60—specific finding on notice); (5) Plaintiff's damages are concrete in the loss of money, affirmative pledges of liability, withholding of funds; and, for the same reasons (R&R, 53, 55–56), (5) Plaintiffs' have RICO standing.

*Id.* (emphasis in original).

## B. MRA's Objections

In its separate objections, MRA asserts as follows:

> MRA objects to the portion of the R&R that declined to dismiss for lack of standing Plaintiffs' class claims challenging the billing of patients at non-party hospitals where Plaintiffs admittedly were never treated or billed. The R&R held that because Plaintiffs have standing to assert ***other*** individual claims in their complaint

pertaining to the hospital system that did treat and bill them, there was no remaining issue of Article III standing. The Court opined that the disconnect between Plaintiffs' alleged injury and the class claims pertaining to non-party hospital billing was a class certification issue to be evaluated under the framework of Rule 23, not Article III standing.

The Court's analysis erroneously failed to apply the Fifth Circuit's controlling authority in *Singh v. RadioShack Corporation*, 882 F.3d 137 (5th Cir. 2018), which (i) held that the proper framework for addressing a disconnect between a plaintiff's individual injury and the class claims is Article III standing, not Rule 23; and (ii) dismissed certain of plaintiffs' class claims where, as here, the named plaintiffs lacked individual standing to assert some of the claims they sought to assert on behalf of a class.

It is undisputed that the two named Plaintiffs were never injured by non-party hospitals' billing of their patients, whether that billing was conducted by the hospitals themselves or by MRA on their behalf. Under the controlling authority in *Singh*, because Plaintiffs' lack individual standing to sue on those non-party hospital billing claims, they also lack standing to assert such claims on behalf of a class. Accordingly, those claims should be dismissed.

Docket No. 122 at 1–2 (emphasis in original).

## APPLICABLE LAW

### I.        Reports and Recommendations

A district court must review a magistrate judge's report and recommendation in light of any objection thereto filed.  *Poe v. Bock*, Civil Action No. EP-17-CV-00232-DCG, 2018 WL 4275839, at *2 (W.D. Tex. Sept. 7, 2018) (citing 28 U.S.C. § 636(b)(1)).  The court must conduct a *de novo* review of any portion to which any party files an objection.  *Id.* (citing 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000)).  As to any portion for which no objection is filed, the court reviews for clearly erroneous factual findings and conclusions of law.  *Id.* (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam)).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948);

also citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." (citing *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998)))).

## II.   Motions to Dismiss

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*, Civil Action No. 4:17-CV-00449, 2018 WL 4352836, at *2 (E.D. Tex. Sept. 12, 2018) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

In deciding the motion, courts may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Id.* at *3 (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996))).  The court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Id.* (citing *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994)).  Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  The court will grant a motion to dismiss for lack of subject matter

jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief.  *Id.* (citing *Lane*, 529 F.3d at 557).

Here, the subject matter jurisdiction challenge is based on a lack of standing.  Standing " 'is perhaps the most important of [the jurisdictional] doctrines.' "  *Id.* (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation omitted in *Adeptus*)).  Under Article III of the Constitution, plaintiffs seeking redress in federal court have the burden of proving that they have standing, meaning they are "entitled to have the court decide the merits of the dispute or of particular issues."  *Singh v. RadioShack Corp.*, 882 F.3d 137, 150–51 (5th Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Standing must be decided at the threshold of every federal case—before a determination on the merits.  *Id.* at 151 (citing *Warth*, 422 U.S. at 498).  To prove standing, plaintiffs must "allege (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct,' and that is (3) 'likely to be redressed by the requested relief.' "  *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))).  In addition to these constitutional requirements, plaintiffs must not run afoul of prudential standing rules, including the "general prohibition on a litigant's raising another person's legal rights."  *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014)).

These standing requirements are equally applicable in class actions.  *Singh*, 882 F.3d at 151.  The Supreme Court has said: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent."  *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotations and citations omitted in *Singh*)).

**B.  Rules 12(b)(6) and 9(b)**

Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Poe*, 2018 WL 4275839, at *2 (quoting FED. R. CIV. P. 8(a)(2).  Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." *Id.* (quoting FED. R. CIV. P. 12(b)(6)). On a Rule 12(b)(6) motion, a court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Id.* (citing *Gines v. D.R. Horton, Inc*., 699 F.3d 812, 816 (5th Cir. 2012)).  A court does not accept as true " '[c]onclusory allegations, unwarranted factual inferences, or legal conclusions.' " *Id.* (quoting *Ferrer v. Chevron Corp*., 484 F.3d 776, 780 (5th Cir. 2007)).

A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet the "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While the complaint does not need detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not do.  *Id.*; *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

While complaints generally need to contain only a short and plain statement of the claim, allegations of fraud must "state with particularity the circumstances constituting fraud." *Poe*, 2018 WL 4275839, at *3 (quoting FED. R. CIV. P. 9(b); also citing *Wheeler v. JP Morgan Chase Bank, Nat'l Ass'n*, Civil Action No. H-15-117, 2015 WL 1758071, at *3 (S.D. Tex. Apr. 17, 2015) ("[C]laims for fraud must state more than facts sufficient to make a plausible claim to relief[:] they must meet the Rule 9(b) pleadings standard.")). Rule 9(b) requires, at a minimum, that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud. *Id.* (quoting *United States ex rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 266 (5th Cir. 2010) (internal quotation marks and citation omitted in *Poe*); also citing *Herrmann Holdings Ltd. v. Lucent Techs. Inc*., 302 F.3d 552, 564–65 (5th Cir. 2002) ("This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.")). But "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case." *Id.* (quoting *Tuchman v. DSC Commc'ns Corp*., 14 F.3d 1061, 1067–68 (5th Cir. 1994)). Thus, Rule 9(b)'s "pleading requirements may be relaxed when the facts relating to the fraud are 'peculiarly within the perpetrator's knowledge.' " *Id.* (quoting *Gonzalez v. Bank of Am. Ins. Servs., Inc*., 454 Fed. Appx. 295, 298 n.3 (5th Cir. 2011) (per curiam)).

## ANALYSIS

### I.  Defendants' Combined Rule 12(b)(1) Motion to Dismiss

Neither Defendant filed objections relating to their Rule 12(b)(1) challenge to subject matter jurisdiction based upon the local controversy exception to the Class Action Fairness Act ("CAFA") and pursuant to 28 U.S.C. § 1332(d)(4) raised in their combined motion to dismiss. Defendants are not entitled to *de novo* review of the unobjected-to factual findings and legal

conclusions contained in the R&R; and except upon grounds of plain error, they are barred from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the District Court.  28 U.S.C. § 636(b)(1)(C); *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).  Nonetheless, the Court has reviewed the pleadings in this case, the matters presented by the parties and the Report and Recommendation and agrees with the Magistrate Judge.  *See United States v. Raddatz*, 447 U.S. 667, 683 (1980) ("[T]he statute permits the district court to give to the magistrate's proposed findings of fact and recommendations 'such weight as [their] merit commands and the sound discretion of the judge warrants . . . .' ") (quoting *Mathews v. Weber*, 423 U.S. 262, 275 (1976)).  The Court thus adopts the Report and Recommendation as the findings and conclusions of the Court and denies Defendants' combined motion to dismiss pursuant to Rule 12(b)(1).

## II.    Defendants' Combined Rule 12(b)(6) Motion to Dismiss

### A.  Introduction

The Court reviews objected-to portions of the Magistrate Judge's Report and Recommendation *de novo*.  *See* FED. R. CIV. P. 72 and 28 U.S.C. § 636(b) (1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings and recommendations to which objection is made.").  The Court conducting a *de novo* review examines the entire record and makes an independent assessment under the law.  *Douglass v. United Servs. Auto . Assoc.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).  The Court now considers Steward's objections to the R&R's findings related to Plaintiffs' RICO claim.

As the Magistrate Judge stated, "a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" in order to state a civil RICO claim.  *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998); R&R at 49.  Further, for a plaintiff to

have standing to sue under RICO, the plaintiff "must satisfy two elements—injury and causation." *Price*, 138 F.3d at 606; R&R at 49–50.

Steward asserts a number of objections to the Magistrate Judge's recommendation that Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' RICO claim be denied.  Neither the motion to dismiss Plaintiffs' RICO claims nor the reply specifically address any of the predicate acts contained in Plaintiffs' complaint, instead focusing on two paragraphs (¶¶ 137, 142) in the SAC. Even so, the Court will consider the specific arguments raised in the objections.  The Court will first consider Steward's objections to the Magistrate Judge's analysis of the alleged predicate acts before considering Steward's objections to the findings and conclusions concerning injury and causation and continuity.  Before doing so, the Court sets forth the relevant allegations from the SAC.

### B.  Plaintiffs' Allegations

Plaintiff Williams was injured in a motor vehicle accident on July 5, 2018, and five days later, she received treatment at Wadley Regional Medical Center for resulting medical issues. SAC, ¶¶ 35–36.  On admission, she notified Steward personnel of her health insurance with Blue Cross Blue Shield ("BCBS"), and Steward personnel acknowledged that Wadley was a participating provider. *Id*. ¶ 36.  Having identified Williams as involved in an automobile accident, Defendants' unlawful system omitted BCBS as the payment source. *Id.*  Instead, it listed MRA as the "primary insurance," listed Williams as "SELF PAY" and coded her financial status as "Legal." *Id.*  Wadley also required Williams to assign eligible insurance benefits that she identified. *Id.* ¶ 37.  The assignment gave no interest in her third-party liability claim against the driver of the other vehicle; and because Williams identified only BCBS, the assignment gave no interest in any other insurance policies. *Id.* ¶¶ 37, 44.

Williams' treatment resulted in medical charges of $9,750.79.  *Id.* ¶ 38.  Pursuant to Texas law and its contract with BCBS, Wadley was required to submit her bills to BCBS for established reimbursement rates, Williams was only responsible for her co-pay and/or deductible, and Wadley was precluded from seeking payment from other sources.  *Id.* ¶¶ 39–41, 45.  At the time of Williams' treatment, the sum of the BCBS reimbursement rate and her own obligation amounted to less than $9,750.79.  *Id.* ¶ 42.  As such, Williams' assignment to Wadley conferred on it no right to claim $9,750.79—from her or any third party.  *Id.* ¶¶ 38–45.

Plaintiffs allege Defendants engaged in a concerted effort to collect this amount from sources not assigned and for amounts Steward was prohibited from collecting.  According to Plaintiffs, this began with MRA's July 26, 2018 letter to Safeway Insurance Company ("Safeway")—the liability insurance company for the other automobile involved in Williams' accident.  *Id.* ¶ 46.  Therein, MRA requested payment for $9,750.79 on grounds that Williams had assigned a liability claim for this amount to Wadley.  *Id.*  MRA sent additional letters to Safeway on November 15 and December 15, 2018, again falsely claiming a balance of $9,750.79.  *Id.* ¶ 48.

According to Plaintiffs, these letters were deceptive and replete with misrepresentations for numerous reasons: (1) Texas law required Steward to bill Williams' health insurance; (2) she owed nothing more than her co-pay and/or deductible pursuant to her BCBS plan, which was far less than $9,750.70; (3) she gave no assignment of her liability claim or any interest in the Safeway or Amica policies; (4) Wadley had not and could not file a lien against her claim; and (5) it was precluded by state law and contract from seeking payment for covered services from third-parties. *Id.* ¶¶ 46–61.

As a result of Defendants' allegedly false and deceptive communications to Safeway and Amica, both required Williams to personally obligate herself for the full $9,750.79 that Defendants

asserted against them before they would issue her settlement proceeds.  *Id.* ¶¶ 60–61.  As of the date of filing this lawsuit, Defendants still had not billed BCBS and maintained that Williams owes Steward the full balance.  *Id.* ¶¶ 58, 62.  As such, Williams placed $500 from her settlement in trust should Defendants attempt to enforce the claim they hold against her.  *Id.* ¶ 63 ("Plaintiff has been without these proceeds and has been harmed in the amount of $500.").

Plaintiff Johnson suffered an injury to her leg in a car accident on March 26, 2019, and she received treatment at Wadley the same day.  *Id.* ¶ 65.  Johnson identified herself as a Medicaid recipient through Amerigroup, but just like with Williams, Defendants' system listed MRA as the primary insurance, listed Johnson as self-pay, and coded her financial status as "Legal."  *Id.* ¶ 66. Likewise, Johnson had to assign to Steward eligible insurance benefits, and she identified only Amerigroup.  *Id.* ¶ 67.

Johnson's treatment resulted in charges of $19,394.54, and the established reimbursement rates that Amerigroup would pay on her behalf was $1,624.92, which is far less than $19,394.54. *Id.* ¶ 69.  Steward's agreement with Amerigroup—like its agreements with other plans backed by Medicaid—precluded it from seeking recovery from a third-party that exceeded the Medicaid payable amount.  *Id.* ¶ 71.  As with Williams and all accident patients, Defendants allegedly circumvented these limitations through deceptive communications and unlawfully collected proceeds belonging to Johnson.

On May 7, 2019 and on behalf of Steward, MRA contacted Esurance Insurance Company ("Esurance")—Johnson's automobile insurance company—and represented that Wadley held an assigned interest against her personal injury protection ("PIP") policy for $19,394.54.  *Id.* ¶ 72. Plaintiffs allege Johnson did not assign her Esurance policy to Wadley, and Steward's contract with Amerigroup prohibited seeking any more than $1,624.92.  *Id.*  Even so, Esurance responded

to Defendants' misrepresentations by paying Wadley $4,420.40 from Johnson's PIP policy the next day—$2,795.48 more than the Medicaid payable amount. *Id.* ¶ 73. In a May 30, 2019 follow-up letter to Esurance, Defendants stated a $14,974.14 balance remained on Johnson's account and requested confirmation that no other payments were available to her. *Id.* ¶ 74.

After Johnson retained counsel for her claim arising from her accident, her counsel received additional false statements from Defendants. *Id.* ¶¶ 75–76. According to Plaintiffs, MRA provided counsel with Johnson's bill on June 25, 2020, which did not disclose that Esurance had paid Johnson's PIP proceeds. *Id.* ¶ 75. In November 2020, Johnson's counsel received from Wadley a statement that, for the first time, stated Wadley had billed Amerigroup on July 11, 2019. *Id.* ¶ 76. This statement made no mention of Esurance's PIP payment. *Id.*

Plaintiffs allege Defendants unlawfully acquired at least $2,795.48 in Johnson's PIP proceeds that only she had a right to receive. *Id.* ¶ 77. Plaintiffs further allege Defendants' communications to Esurance and Johnson were plainly false and deceptive: Defendants had obtained no assignment to Johnson's Esurance proceeds, or any source other than Johnson's Amerigroup policy; and Wadley's contract with Amerigroup prohibited any recovery exceeding the Medicaid payable amount. *Id.* ¶¶ 72–77. According to Plaintiffs, even if Defendants had a right to recover Johnson's PIP proceeds (and they did not), they would never be able to recover more than $1,624.92. *Id.* ¶ 76.

Specifically regarding RICO, Plaintiffs allege as follows:

Plaintiff Williams has been and continues to be actually harmed and damaged by Defendants' conduct in that (1) she has been forced to have withheld monies in the amount of $500; (2) she has had to personally and contractually obligate herself as being liable in the amount of $9,750.79 to Amica based upon Defendants' false statements; and (3) she has had to personally and contractually obligate herself to Safeway for any claim or even demand from Defendants (as already made by MRA on January 3, 2019) in the amount of $9,750.79. Based upon these harms, Plaintiff Williams seeks injunctive relief. As more fully alleged above, Plaintiff Johnson has

been and continues to be actually harmed and damaged by Defendants' conduct in that they unlawfully took from her the amount of at least $2,795.48. Based upon her harms and continuation of those harms caused by Defendants' conduct alleged herein, Plaintiff Johnson seeks damages in at least the amount of $2,795.48 for herself and other compensatory damages for the Class. On behalf of themselves and/or the Class Members, Plaintiffs seek compensatory damages for the Defendants' violations of 18 U.S.C. § 1962 (c) and (d).

*Id.* ¶ 148.  Pursuant to 18 U.S.C. § 1964(a), Plaintiffs seek on behalf of themselves and the putative class members injunctive relief to prevent and restrain Defendants' unlawful activities.  *Id.* ¶ 149.

### C.  Discussion

#### 1.  RICO Predicate Acts

"The term 'racketeering activity' is defined to include a host of so-called predicate acts," including mail and wire fraud.  *Harris County, Texas v. Eli Lilly & Co.*, Civil Action No. H-19-4994, 2020 WL 5803483, at *5 (S.D. Tex. Sept. 29, 2020) (quoting *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1961)).  "[W]ire fraud involves the use of, or causing the use of, wire communications in furtherance of a scheme to defraud."  *Id.* (quoting *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)).  "The mail fraud statute applies to anyone who knowingly causes to be delivered by mail anything for the purpose of executing any scheme or artifice to defraud."  *Id.* (quoting *Allstate*, 802 F.3d at 675 (quoting *United States v. Whitfield*, 590 F.3d 325, 355 (5th Cir. 2009))).  Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud claims with particularity and applies to plaintiffs pleading predicate acts for RICO claims "resting on allegations of fraud."  *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

In *Harris County*, the plaintiff filed suit against two sets of defendants (pharmaceutical manufacturer defendants and pharmacy benefit manager ("PBM") defendants), alleging it had been fraudulently overcharged and had overpaid for medications because the PBM defendants and

the manufacturer defendants conspired to artificially raise the price of diabetes medications in what Harris County called the "Insulin Pricing Scheme." *Harris County*, 2020 WL 5803483, at *1–2. Harris County alleged the PBM defendants made misrepresentations so that Harris County would rely on the misrepresentations and pay the inflated reported prices for the medications.  *Id*. at *3. Both sets of defendants moved to dismiss the plaintiff's RICO claims, first asserting Harris County had not pleaded its fraud allegations with the requisite level of particularity.  *Id*. at *3, *5.  The court disagreed, stating Harris County outlined "its mail and wire fraud allegations with the required level of detail at this stage in the litigation because they provide[d] the 'who, what, when, and where' of the alleged fraud."  *Id*. at *5 (quoting *Williams*, 112 F.3d at 178).

In its second specific objection, Steward asserts Plaintiffs have not pleaded their fraud allegations with the requisite level of particularity.  According to Steward, "Plaintiffs allege 13 predicate acts ('Acts') consisting of written communications: (i) from MRA to Safeway Insurance Company ('Safeway') on July 10, 2018 (Act 1), November 15, 2018 (Act 2), December 15, 2018 (Act 3) and January 3, 2019 (Act 6); (ii) from MRA to Amica Insurance Company ("Amica") on January 4, 2019 (Act 7) and January 24, 2019 (Act 8); (iii) from MRA to Esurance Insurance Company ('Esurance') on May 7, 2019 (Act 10) and May 30, 2019 (Act 11); (iv) from MRA to Plaintiffs' counsel Mr. Jim Wyly on November 16, 2018 (Act 4 - Williams), December 26, 2018 (Act 5 -Williams) and June 25, 2020 (Act 12 - Johnson); (v) from Steward to Plaintiffs' counsel on March 26, 2019 regarding Williams (Act 9); and (vi) from Steward's Wadley Regional Medical Center to Plaintiffs' counsel in November 2020 regarding Johnson (Act 13)."  Docket No. 121 at 2 (citing Docket No. 67-3, Ex. 3; also citing SAC ¶¶ 46–58, 72–76).  In its general "remaining objections," Steward objects, without any substantive argument, to the Magistrate Judge's conclusions that specific intent was sufficiently alleged as to any predicate act and that the SAC

sufficiently identified the particular Defendant alleged to have taken each action and did not engage in prohibited "group pleading."  *Id*. at 8.

In the background section of the R&R, the Magistrate Judge summarized Plaintiffs' allegations regarding Defendants' conduct toward both Plaintiffs and the alleged fraudulent "revenue enhancement scheme."  R&R at 2–10.  In her discussion, the Magistrate Judge first noted Plaintiffs' assertion that Defendants isolated two paragraphs from Plaintiffs' RICO Count IV for the proposition that Plaintiffs do not plead "specific facts" and rely on "conclusory allegations," ignoring "entirely all of Plaintiffs' factual allegations."  *Id*. at 58–59.  The Magistrate Judge then noted Plaintiffs' assertion they had alleged with specificity the exact communications by letter, fax, email, date, content, what was asserted and the alleged deceptive act.  *Id*. at 59 (citing Hearing Transcript (Docket No. 112) at 35:17–21).  The Magistrate Judge held as follows:

> Courts evaluate compliance with Rule 9(b) by considering "the allegations as a whole," not in isolation. *See, e.g., Gilmour, Trustee for Grantor Trusts of Victor Parent Co., L.L.C. v. Aetna Health, Inc.*, Civil Action No. SA-17-CV-00510-FB, 2018 WL 4937072, at *7 (W.D. Tex. Oct. 11, 2018). As summarized above, and throughout over fifteen pages of the SAC, Plaintiffs thoroughly and expressly allege each of the thirteen communications Defendants sent incident to their scheme to defraud. *See* SAC, ¶¶ 35-79. For the Court's reference, Plaintiffs attached as Exhibit 3 a chart of each allegation pertaining to each Rule 9(b) requirement. Plaintiffs' counsel went through the chart at the hearing, starting with the alleged specific acts of fraud for Williams, which 'span from July 10th of 2018 to Mach 26 of 2019.' Docket Entry # 112 at 39:6-14 (further stating the predicate acts alleged in regard to Johnson's RICO claim involve acts that began on May 7, 2019 and continue through November of 2020, after the filing of this lawsuit).

> With each alleged communication, Plaintiffs provide: (1) the senders; (2) the recipients; (3)the form of communication; (4) the content of the communication; and (5) an explanation as to how each communication was fraudulent. *See Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."). These allegations establish the "who, what, when, where, and how" of each communication, which both "ensure[s] that the Defendants have notice of the precise act[s and] conduct that is being questioned as fraudulent," *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 365 (S.D. Tex. 2009), and

> "make the predicate acts alleged by Plaintiff[s] plausible." *Benhamou,* 190 F. Supp. 3d at 660 (quoting *Adhikari v. Daoud & Partners,* 697 F. Supp. 2d 674, 693 (S.D. Tex. 2009); *see also id.* ("[T]hese factual allegations 'indicate conscious behavior on the part of the Defendants,' thereby 'supporting an inference of fraud.' ") (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 339 (5th Cir. 2008)).
>
> At the hearing, Plaintiffs' counsel specifically addressed their Predicate Acts Chart (Docket Entry # 67-3), first noting Predicate Act 1 references paragraphs 46-47 of the SAC. Docket Entry # 112 at 41:21-23. In the chart, Plaintiffs break "this down to the who, what, when, where, and how for each of the specific letters of communications." *Id*. at 41:23-25.

*Id.* at 59–60.

The Magistrate Judge then provided an example of the information contained in the Predicate Acts Chart for Act 1, noting Plaintiffs do the same for the remaining 12 Acts. *Id.* at 60–61. The Magistrate Judge also outlined the specific allegations contained in paragraphs 29 to 32 of the SAC, wherein Plaintiffs allege, among other things, that as part of the overall scheme Defendants intentionally do not maintain policies and intentionally do not communicate with each other about the form agreements of the hospitals or about their insurance contracts. *Id.* at 62 (further noting Plaintiffs' counsel's argument at the hearing that the scheme is "well developed," "well orchestrated," and "it has been executed for well over a period of two years, and it continues to be executed even after the filing of the lawsuit"). In conclusion, the Magistrate Judge found Plaintiffs had pleaded Defendants' alleged predicate acts of mail and wire fraud with sufficient particularity in compliance with Rule 9(b). *Id.*

Steward asserts the Magistrate Judge erred in determining Plaintiffs sufficiently pleaded any of these alleged Acts. Steward first contends the "R&R does not contain separate conclusions that each of the alleged 13 Acts were in furtherance of the purported scheme, that each evidenced an intent to defraud, or that the reliance component of causation was sufficiently pleaded as to each Act, but these conclusions are either referenced in passing or implied at R&R pages 59, 60,

and 53–56, respectively." Docket No. 121 at 2. According to Plaintiffs' response, to the extent the "Magistrate Judge's thorough analysis does not include 'specific findings' on these three issues, the reasons are obvious: (1) Defendants did not raise them in their motion to dismiss and they are waived and (2) these specific conclusions are inherently included in the recitation of the allegations and findings of fraud and pattern of racketeering activity." Docket No. 126 at 3–4 (citing R&R at 57–66). The Court agrees.

Additionally, and more specifically, Steward asserts Plaintiffs fail to allege with requisite particularity how any of the communications to Plaintiffs' counsel (Acts 4–5, 9, 12–13) were in furtherance of the alleged scheme or how the success of the scheme depended on the communications such that the communications could constitute predicate acts of mail or wire fraud. Docket No. 121 at 3 (further asserting Esurance paid Wadley before MRA's June 25 (Act 12) and November 2020 (Act 13) communications to Plaintiffs' counsel). Steward maintains MRA's June 3 and 4, 2019 communications to Safeway (Act 6) and Amica (Act 7), wherein MRA advised that its prior correspondence pertaining to Williams was sent "in error" and that Williams had commercial health insurance, demonstrate the absence of facts supporting an inference of fraud and further show the absence of an intent to deceive with respect to the preceding communications. *Id.* at 3–4. According to Steward, even though Plaintiffs also cite a January 24, 2019 MRA letter to Amica (Act 8), "Plaintiffs do not allege that Amica either disregarded the January 4 letter or chose to rely on the January 24 letter when purportedly asking that Williams agree to assume responsibility for outstanding medical bills."

Like the court in *Harris County*, the Court finds all of Plaintiffs' "allegations combined are enough to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Harris County*, 2020 WL 5803483, at *5. As urged by Plaintiffs, Williams' predicate acts 1–3 and 6–8

involve false claims via mail or fax to third party insurance companies that Steward possessed rights to liability proceeds it did not have and for amounts that it could not legally claim. *See* SAC ¶¶ 46–48; *see also* R&R at 60–61.  Plaintiffs allege that "[b]y reason of' Defendants' false communications to Safeway and Amica concerning Wadley's right to respective liability and no-fault proceeds, each provider required her personal pledge to reimburse them from any claim arising from Defendants' misrepresentations." R&R at 53 (citing Docket No. 67 at 21 (citing SAC ¶¶ 60–61)).  Williams's predicate acts 4–5 and 9 involve allegedly false claims made to Plaintiffs' counsel that Steward possessed rights to liability proceeds that it did not have and for amounts it could not legally claim. *See* SAC ¶¶ 49–51.  The Magistrate Judge specifically found, "Plaintiffs have further alleged that 'by reason of' Defendants' false communications to Williams concerning these rights, their refusal to bill her health insurance, and their continued assertion that she owes a balance of $9,750.79, Williams placed $500 in trust should they further pursue this claim against her." R&R at 53 (citing SAC ¶¶ 62–63).

Regarding Johnson, her predicate acts 10 and 11 involve false claims via mail or fax to a third-party insurance company representing that Steward possessed rights it did not have and for amounts that it could not claim. *See* SAC ¶¶ 72, 74; *see also* R&R at 52–55 (further discussing Plaintiffs' detail as to the effect of the false claims on the insurance company).  The Court agrees with the Magistrate Judge that Plaintiffs have adequately alleged concrete financial loss by reason of criminal actions under federal law. R&R at 56 (" 'By reason of' Defendants' alleged false assertions to Esurance concerning Wadley's [Steward's] right to her PIP proceeds, Johnson suffered the concrete financial loss of the proceeds to which she was already entitled. Thus, her loss 'is the direct result of [Defendants]' fraud.' *Bridge*, 553 U.S. at 658. The same is true for Williams.").

Steward's other arguments are without merit.  Although Steward complains intent was not addressed, Plaintiffs point out the Magistrate Judge specifically included in the R&R the discussion about intent from the hearing to support her conclusions regarding 9(b) standards for the element of fraud (which includes intent).  Docket No. 126 at 3 (citing R&R at 57–62).  Steward argues the communications to Plaintiffs' counsel (Acts 12 and 13) cannot form predicate acts because they post-date the payment of insurance proceeds and that the Magistrate Judge erred in not specifically addressing these two communications.  However, as with the other Acts, "Steward never specifically addressed these two communications in its motion."  Docket No. 126 at 5.  Nevertheless, Plaintiffs persuasively assert the communications are false and amount to predicate acts because (1) the June 25, 2020 correspondence falsely submitted a bill for $19,394.54, and failed to disclose the Esurance payment when Esurance had already paid Steward; and (2) the November 2020 correspondence falsely claimed Wadley [Steward] had billed and received payment from Plaintiff Johnson's medical health insurance plan—not Esurance.  R&R at 61.

According to Plaintiffs, Steward further ignores the Magistrate Court's recitation of Plaintiffs' additional allegations as to Johnson:

> Moreover, Defendants' scheme of collection from Plaintiff Johnson is deceptive and fraudulent because it violates Texas Administrative Code § 354.2322, as Defendants made no proper reporting to Medicaid, ***unlawfully communicated a bill to Plaintiff's counsel, and they failed to follow every single, enumerated step required to obtain monies from third parties, making every communication to Plaintiff Johnson's counsel*** and all third parties to be completely deceptive and false.

Docket No. 126 at 5–6 (quoting R&R at 61 (emphasis added by Plaintiffs)).  The Court finds Acts 12 and 13 were properly considered, as were all of the Acts which were broken down to the "who, what, when, where, and how" by Plaintiffs in the Predicate Acts Chart.  The Magistrate Judge's thorough discussion of the Predicate Acts Chart, as well as the allegations in the SAC and counsels'

arguments at the hearing, demonstrate the Magistrate Judge properly considered all of the Acts in finding sufficient particularity in compliance with Rule 9(b).  *See* R&R at 59–62.

Finally, regarding Steward's challenges regarding Act 6 (January 3, 2019 correspondence) and Act 7 (January 4, 2019 correspondence), Plaintiffs assert each is false because it wrongly asserts a balance of $9,750.79.  Docket No. 126 at 6 (citing SAC ¶¶ 52–53; Docket No. 67-3 at 4– 5).  According to Plaintiffs, each claimed a subsequent bill may be sent for any remaining patient responsibility where no right existed to obtain payment from these sources in any amount.  *Id.* Moreover, Plaintiffs assert "Steward divorces these acts from related predicate acts 8 and 9, where Steward (1) falsely asserted that Williams's no-fault benefit provider—not the commercial health insurance—was the primary payor for false amount of $9,750.79; and (2) falsely claimed Williams' health insurance would not cover the treatment." *Id.* (citing SAC ¶¶ 57–58, 64).

The Court agrees all these allegations support the Magistrate Judge's ultimate determination that the predicate acts were sufficiently alleged.  Therefore, Steward's objections regarding the RICO predicate acts are overruled.

   *2. Injury and Causation*

In its specific objections and in several of its general "remaining objections," Steward objects to certain parts of the Magistrate Judge's findings and conclusions on whether Plaintiffs have sufficiently pleaded injury and proximate cause.  R&R at 51–57.  To have standing under the statute, a plaintiff must (1) suffer injury to business or property (2) caused by a substantive RICO violation.  *Earl v. Boeing Co.*, 339 F.R.D. 391, 427 (E.D. Tex. 2021) (citing *Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992); 18 U.S.C. § 1964(c)).  After setting out the applicable law, the Court first considers causation, the statutory-standing element substantively addressed in Steward's objections.  Steward only objects generally in its remaining objections to the Magistrate

Judge's conclusions regarding injury.  *See* Docket No. 121 at 8 (Steward objecting to the Magistrate Judge's conclusions that Johnson was injured (as Johnson is a Medicaid recipient and Plaintiffs do not plead facts showing Johnson was entitled to receive funds from Esurance); that Plaintiffs suffered damage to "business or property"; and that Plaintiffs' damages were concrete and not speculative).

RICO injury occurs when a person's "business or property" is injured.  *Earl*, 339 F.R.D. at 427 (citing 18 U.S.C. § 1964(c)).  An injury "must be 'conclusive' and cannot be 'speculative.' " *Id*. (quoting *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist*., 786 F.3d 400, 409 (5th Cir. 2015) (quoting *In re Taxable Mun. Bond Sec. Litig*., 51 F.3d 518, 523 (5th Cir. 1995))).  "Injury to mere expectancy interests or to an 'intangible property interest' " is also insufficient to qualify as an injury for RICO purposes.  *Id.* (quoting *Price v. Pinnacle Brands, Inc*., 138 F.3d 602, 607 (5th Cir. 1998); also citing *id.* at 607 n.21 (delineating that purchasing chattel based on a defendant's misrepresentation of the chattel's value is not a RICO injury, while purchasing chattel at a price set by the defendant that is greater than the chattel's fair market value may be a RICO injury)).  Simply, a plaintiff must demonstrate RICO injury through a "concrete financial loss."  *Id.* (quoting *Patterson v. Mobil Oil Corp*., 335 F.3d 476, 492 n.16 (5th Cir. 2003); *United States v. Hager*, 879 F.3d 550, 554 (5th Cir. 2018)).  "[W]hether a given party has suffered a RICO injury is a fact-heavy question."  *Id.* (quoting *Nat'l Enterprises, Inc. v. Mellon Fin. Servs. Corp. No. 7*, 847 F.2d 251, 254 (5th Cir. 1988)).

Suffering injury to one's business or property is only half of the RICO-standing equation. *Id.* at 430.  That injury must also occur "by reason of a violation of section 1962."  *Id.* (quoting 18 U.S.C. § 1964(c)).  This statutory language signifies that a defendant's substantive RICO violation must be "a 'but for' . . . [and] proximate cause" of the alleged injury.  *Id.* (quoting *Holmes v. Sec.*

*Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *McCampbell v. KPMG Peat Marwick*, No. 3:96-CV-3136, 1997 WL 311521, at *2 (N.D. Tex. May 30, 1997) ("Whether the predicate acts proximately caused the alleged injuries is the 'crux of the analysis' for civil RICO standing.") (quoting *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989))).  "Proximate cause should be evaluated in light of its common-law foundations and requires some direct relation between the injury asserted and the injurious conduct alleged." *Id.* (quoting *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 965 (5th Cir. 2019) (citing *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc))).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.* (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  "If some other conduct directly caused the harm, the plaintiff cannot sustain a RICO claim." *Id.* (quoting *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020)).  Evaluating RICO's statutory-standing elements is a fact-intensive inquiry that necessitates case-specific considerations. *Id.* at 425 (citing *Nat'l Enters.*, 847 F.2d at 254–55 (5th Cir. 1988); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 223 (E.D.N.Y. 1999)).

In its second specific objection, Steward asserts Plaintiffs do not plead that they or their counsel relied on the communications sent to Plaintiffs' counsel; thus, the SAC's allegations evidence a lack of reliance and thus causation.  Docket No. 121 at 3; *see also id.* at 5 ("The Judge erred in determining that Predicate Acts 1–3 and 6–8 were sufficiently pleaded (*see* R&R, 59) as the SAC does not allege reliance with respect to those communications.").  Relatedly, in its third specific objection, Steward objects to the Magistrate Judge's "implicit legal conclusions that Williams need not have relied on any of the communications" when signing the releases and when

depositing $500 in trust.  Docket No. 121 at 5.  According to Steward, the Magistrate Judge erred

in applying *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), a Supreme Court case

relied upon by Plaintiffs, wherein the Court noted RICO's text imposes no requirement of first-

party reliance but instead "provides a right of action to '[a]ny person' injured by the violation,

suggesting a breadth of coverage not easily reconciled with an implicit requirement that the

plaintiff show reliance in addition to injury in his business or property."  R&R at 52 n.8 (quoting

*Bridge*, 553 U.S. at 649 (quoting 18 U.S.C. § 1964(c))).  According to Steward, *Bridge* stands for

the proposition that there is no causation unless the recipient of a mailing "accepted" the false

assertions contained therein.  Docket No. 121 at 5 (citing *Bridge*, 553 U.S. at 658).

　　Steward asserts the SAC does not allege Williams relied on any allegedly false statements

and shows Williams never believed them.  *Id.* (citing SAC ¶¶ 57, 59–61 (reflecting Williams was

represented by counsel and that Williams' counsel believed Williams' commercial insurer—and

not Williams herself—was responsible for paying Williams' medical expenses)).[3]  Thus, according

to the third specific objection, Plaintiffs have failed to plead the reliance component of causation,

and therefore also standing, with respect to Williams.  *Id.*; *see also id.* at 8 (general remaining

objection to the conclusion that Plaintiffs have RICO standing).

　　The Court begins with *Bridge*.[4]  There, the Supreme Court held as follows: "[A] person

can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any

---

[3] According to Steward, even if "Williams' execution of the settlement agreements somehow stemmed from Safeway and Amica's actions, causation would still be lacking because MRA had already notified Safeway and Amica that MRA sent the claim letters 'in error' by the time Williams executed the agreements," and "the SAC does not allege when the $500 was deposited into the trust or whose idea it was to create the trust."  Docket No. 121 at 5–6.

[4] *Bridge* involved prospective buyers of tax liens sold by the Cook County, Illinois Treasurer's Office at public auction. *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 301 (3d Cir. 2020) (quoting *Bridge*, 553 U.S. at 642, 128 S.Ct. 2131).  Because the structure of the bidding system permitted multiple prospective buyers to submit the winning amount, the County decided to "allocate parcels 'on a rotational basis' in order to ensure that liens [were] apportioned fairly among [the bid winners]."  *Id.* (quoting *Bridge*, 553 U.S. at 643, 128 S.Ct. 2131).  To prevent a bidder from sending agents to bid the winning amount on their behalf, thereby obtaining a disproportionate share of

misrepresentations." *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 637 (5th Cir. 2016) (quoting *Bridge*, 553 U.S. at 649). The Court explained that "[p]roof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause, but there is no sound reason to conclude that such proof is always necessary." *Id.* (quoting *Bridge*, 553 U.S. at 659). It further recognized that "the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, but it is not in and of itself dispositive." *Id.* At bottom, "the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance into an element of the cause of action." *Id.* (quoting *Bridge*, 553 U.S. at 659) (quoting *Anza*, 547 U.S. at 478 (Thomas, J., concurring in part and dissenting in part))). Indeed, "[u]sing the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any

---

liens, the County adopted the "Single, Simultaneous Bidder Rule," which required each entity to submit bids only in its own name. *Id.*

    The plaintiffs in *Bridge*, a group of bidders, claimed they were injured when the defendants, other bidding entities, committed mail fraud, a RICO predicate, by "arrang[ing] for related firms to bid on [the defendants'] behalf and direct[ing] them to file false attestations that they complied with the Single, Simultaneous Bidder Rule." *Id.* at 302 (quoting *Bridge*, 553 U.S. at 644). By collusively submitting winning bids, the defendants were able to collectively acquire a greater number of liens than would have been granted to a single bidder acting alone. *Id.* The *Bridge* plaintiffs complained that the defendants' fraudulent submissions regarding compliance with the Single, Simultaneous Bidder Rule and their collusion deprived the plaintiffs of their fair share of liens and related financial benefits. *Id.*

    Agreeing with the plaintiffs, the Supreme Court concluded that they had adequately alleged a "direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles" even though the plaintiffs had not relied first-hand on the defendants' alleged mail fraud. *Id.* (quoting *Bridge*, 553 U.S. at 657–58). Unlike in *Anza* and *Hemi Group, L.L.C. v. City of New York*, 559 U.S. 1 (2010), where other parties suffered more direct injuries than the plaintiffs, in *Bridge*, the county—which sold the tax liens at prices not dependent on who was the buyer—was not injured. *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1250–51 (9th Cir. 2019). Rather, the plaintiffs were the immediate victims of the defendants' fraud and were best situated to sue the defendants. *Id.* (citing *Bridge*, 553 U.S. at 658). Thus, the Supreme Court held the plaintiffs had sufficiently alleged proximate cause under RICO. *Id.* at 1250–51 (citing *Bridge*, 553 U.S. at 661).

misrepresentation." *Id.* (quoting *Bridge*, 553 U.S. at 648).  The Court stated in its analysis the following: "Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim." *Custom Hair Designs by Sandy v. Cent. Payment Co., L.L.C.*, 984 F.3d 595, 602 (8th Cir. 2020), *cert. denied sub nom.*, 142 S. Ct. 426 (2021) (quoting *Bridge*, 553 U.S. at 655); also comparing *In re United States Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 121–22 (2d Cir. 2013) (affirming RICO certification in pricing case) and *Torres*, 838 F.3d at 639 (5th Cir. 2016) (en banc) (post-*Bridge* case certifying RICO class), with *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003) (pre-*Bridge* case reversing RICO certification in pricing case)).

As explained by the Fifth Circuit Court of Appeals in *Torres*,[5] it applied *Bridge* in *St. Germain v. Howard*, 556 F.3d 261 (5th Cir. 2009), explaining that "no reliance requirement exists for civil causes of action under RICO for victims of mail fraud." *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 637 (5th Cir. 2016) (en banc) (quoting *St. Germain*, 556 F.3d at 263).  The Fifth Circuit relied on the same principle in *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015), noting again that "[i]n cases predicated on mail or wire fraud, reliance is not necessary." *Id*. (quoting *Allstate*, 802 F.3d at 676).

---

[5] In *Torres*, the en banc Fifth Circuit considered the narrow issue of whether the plaintiffs may prove RICO causation through common proof such that individualized issues will not predominate at trial, the import of which was whether class certification was appropriate under Federal Rule of Civil Procedure 23(b)(3). *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 635 (5th Cir. 2016) (en banc).  The defendants' challenge to predominance rested on their belief that the causation element would require individualized proof. *Id.* at 636–37. According to the Fifth Circuit, "that premise, and thus much of their opposition to class certification, is at odds with recent decisions from the Supreme Court and this court emphasizing that RICO claims predicated on mail and wire fraud do not require first-party reliance to establish that the injuries were proximately caused by the fraud." *Id*. at 637 (citing *Bridge*, 553 U.S. at 654; *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015)).

After outlining other circuits' "similar definitions of proximate causation under RICO,"[6] the Fifth Circuit stated as follows:

> As will be shown below, this understanding of the causation requirement for fraud-based RICO claims—that such claims, unlike most common law fraud claims, do not require proof of first-party reliance—largely dooms the Defendants' attempt to identify individual issues of causation sufficient to preclude a finding of predominance.

*Id.* at 638.  According to the court, under *Bridge*, the most straightforward way of demonstrating reliance in a classwide manner is the plaintiffs' foreseeability argument; this just requires showing that the plaintiffs' losses were caused "by reason of" the defendants' operation of a fraudulent scheme.[7] *Id.*

In its objections, Steward asserts the Magistrate Judge erred in applying *Bridge* to the facts of this case and that Plaintiffs have failed to plead the reliance component of causation. Docket No. 121 at 5.

Responding, Plaintiffs first point out there is no discussion or legal conclusion as to Plaintiff Williams in footnote 8.[8]  However, according to Plaintiffs, the Magistrate Judge was correct that RICO has no "implicit requirements that the plaintiff show reliance in addition to

---

[6] For example, the First Circuit Court of Appeals, relying on the Supreme Court's discussion in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), looks to the directness between the injury and alleged conduct with reference to "three functional factors": (1) concerns about proving damages from attenuated injuries, (2) preventing multiple recoveries and (3) whether societal interest in deterring the alleged conduct is served by the case.  *Torres*, 838 F.3d at 638 (5th Cir. 2016) (en banc) (citing *In re Neurontin Mktg. and Sales Practices Litig.*, 712 F.3d 21, 35–36 (1st Cir. 2013)).

[7] As further explained by District Judge Mazzant in the class certification context, to render first-party reliance "not determinative of whether the [p]laintiffs can prove proximate causation under *Bridge*," the plaintiffs must prove that (1) the defendants operated a fraudulent scheme that caused RICO injury; (2) the plaintiffs are "both the direct and foreseeable victims of the alleged fraud"; and (3) the plaintiffs are "necessary to the scheme."  *Earl v. Boeing Co.*, 339 F.R.D. 391, 435 (E.D. Tex. 2021) (quoting *Torres*, 838 F.3d at 640).  Once the plaintiffs make these showings, it is not necessary to demonstrate the class members themselves relied on a representation made by the defendants.  *Id.*

[8] The Court notes the Magistrate Judge addressed *Bridge* in a footnote, presumably because Defendants raised the issue in a footnote.

injury to his business or property." Docket No. 126 at 6, n.1 (quoting R&R at 52 n.8).  Again, the Court agrees.

In *Harris County*, discussed above, the district court upheld the rule that reliance is not a requirement of causation.  2020 WL 5803483, at *11 (citing *St. Germain*, 556 F.3d at 263).  In doing so, the court held that Harris County's claim that the defendants "misleadingly relabeled rebates so as to avoid paying them to Harris County" and that the defendants' conspiracy to artificially raise the price of insulin was sufficient to show "a direct relationship between the alleged conduct and their injury." *Id.*

Here, the Court first notes, as illustrated above, that reliance is not a requirement of causation.  What is more, the Court agrees with Plaintiffs that the Magistrate Judge thoroughly considered the predicate acts and their combined effect causing alleged injury to Plaintiffs.  As urged by Plaintiffs, although "Steward wants to interpret Plaintiff William's [sic] and her counsel' actions as evidence that Williams 'never believed' the threats (Doc. 121, at 5), the SAC leaves no room for this interpretation, and the Magistrate Judge was correct because in finding causation and harm 'by reason of' the fraudulent conduct the Court was required to 'draw all reasonable inferences in the plaintiff's favor.' "  Docket No. 126 at 6–7 (quoting *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009)).

The Court also finds without merit Steward's three remaining objections to the Magistrate Judge's following conclusions regarding injury: that Johnson was injured; that Plaintiffs suffered damage to business or property; and that Plaintiffs' damages were concrete and not speculative. *See* Docket No. 121 at 8.  These general objections are not substantively addressed in the objections and are without merit.  The Court overrules Steward's objections related to injury and causation.

### 3.  *Pattern of Racketeering Activity*

In its first and fourth specific objections, Steward criticizes the Magistrate Judge's analysis of the SAC's continuity allegations.  In the first specific objection, Steward asserts the Magistrate Judge erred in applying a liberal pleading standard to the continuity aspect of Plaintiffs' RICO claims rather than subjecting them to particular scrutiny.  Relying on, among other cases, *Poe v. Bock*, Civil Action No. EP-17-CV-00232-DCG, 2018 WL 4275839 (W.D. Tex. Sept 7, 2018), Plaintiffs assert the Magistrate Judge did not closely scrutinize Plaintiffs' allegations of continuity. Docket No. 121 at 1–2.  The Court disagrees.

To establish a pattern of racketeering activity, "a plaintiff must show both a relationship between the predicate offenses—here mail fraud and wire fraud—and the threat of continuing activity." *Harris County*, 2020 WL 5803483, at *9 (quoting *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989))).  "[T]o prove a pattern of racketeering activity, a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 239).

In *Harris County*, the defendants cited to *Poe*.  2020 WL 5803483, at *5 n.6.  The court stated *Poe* was both legally and factually distinguishable from Harris County's case, first pointing out the court in *Poe* was analyzing the continuity element when discussing the importance of scrutiny in RICO claims based on mail or wire fraud, not Rule 9(b) particularity.  *Id.*  Second, according to the court in *Harris County*, the plaintiffs in that case alleged a "narrow scheme" to "wrest away control" of a family business with facts vastly different from those Harris County alleged.  *Id.*  Thus, the court was not persuaded by *Poe*.  The court noted Harris County alleged a scheme which involved thousands of related mail and wire transmissions for the common purpose

of deceiving Harris County and other health plans that allegedly occurred over a period of many years and is still ongoing today; thus, there was a threat of continuing activity, and the alleged predicate acts were related as part of one alleged scheme. *Id.* at *9. The court found this was enough to constitute a pattern of racketeering activity. *Id.*

Similarly here, the Court finds *Poe* factually distinguishable. The Court also finds, as did the Magistrate Judge, the allegations in the SAC are sufficient to constitute a pattern of racketeering activity. Plaintiffs persuasively argue as follows in their response:

> Recognizing that applicable laws and contracts limit hospitals' collection activities, the Magistrate Judge correctly found Plaintiff sufficiently alleged a deceptive scheme to circumvent these limits *in Steward's business model. See* R&R, at 2-3. This included: identifying accident patients through patient-screening systems, ignoring patients' primary insurance plans, foregoing billing patients' health insurance plans or Medicaid; and asserting assignments of interests Steward does not possess and for amounts it is precluded from collection. *See id.* at 3-4. Thus, the Magistrate Judge correctly formulated Plaintiffs' allegations showing the 'revenue enhancement scheme' is part of Steward's 'regular way' of doing business and with certain repetition in association with each patient involved in motor vehicle accidents. Further, the Magistrate Judge found supporting Plaintiffs' allegations relating to each Plaintiff from separate car wrecks and the over two year duration of the scheme which continued after the filing of the lawsuit. R&R, 62, 66.

Docket No. 126 at 7–8 (emphasis in original) (internal footnote omitted).

The Court overrules Steward's objections regarding continuity, finding the Magistrate Judge correctly analyzed the SAC's allegations in finding Plaintiffs sufficiently pleaded the threat of continuing activity.

*4. Conclusion*

The Court has carefully reviewed the relevant briefing, the Report and Recommendation, the objections, and the response to the objections and is of the opinion the findings and conclusions of the Magistrate Judge are correct. Regarding Defendants' combined motion to dismiss, the

Court adopts the Magistrate Judge's report as the findings and conclusions of the Court.  The motion is denied.

The Court now considers MRA's objections to the Magistrate Judge's findings and conclusions regarding its separate Rule 12(b)(1) motion to dismiss.

## III.    MRA's Separate Rule 12(b)(1) Motion to Dismiss

### A.  Introduction

MRA objects to the portion of the R&R that declined to dismiss for lack of standing Plaintiffs' class claims challenging the billing of patients at non-party hospitals where Plaintiffs admittedly were never treated or billed.  According to MRA, the Magistrate Judge failed to apply the Fifth Circuit's controlling authority in *Singh v. RadioShack Corporation*, 882 F.3d 137 (5th Cir. 2018), which (i) held that the proper framework for addressing a disconnect between a plaintiff's individual injury and the class claims is Article III standing, not Rule 23; and (ii) dismissed certain of plaintiffs' class claims where, as here, the named plaintiffs lacked individual standing to assert some of the claims they sought to assert on behalf of a class.  Relying on *Singh*, MRA argues that because Plaintiffs' lack individual standing to sue on those non-party hospital billing claims, they also lack standing to assert such claims on behalf of a class.  Docket No. 122 at 1–2.

In their response, Plaintiffs assert the Court should adopt the R&R as the findings and conclusions of the Court for the following reasons: (1) Plaintiffs allege sufficient facts to establish their own Article III standing, which MRA does not challenge, and the Magistrate Judge correctly found that Plaintiffs have Article III standing; (2) the Magistrate Judge correctly found that (a)  Plaintiffs' allegations against MRA are the same or substantially similar to the class members' claims against MRA, and (b) the injury MRA caused Plaintiffs and class members is the same or

substantially similar; and (3) the Magistrate Judge correctly found (a) Plaintiffs have individual Article III standing, (b) Plaintiffs seek to represent class members who have suffered essentially the same injury as Plaintiffs and (c) Rule 23 is the better framework for analyzing differences between the named Plaintiffs and the absent class members.  Docket No. 125 at 1–2 (internal quotations and citations omitted).

## B.  Discussion

According to MRA, although the R&R discussed the holding of *Singh* (R&R at 75–77), it did not address, analyze or distinguish *Singh* as compared to Plaintiffs' allegations.  Docket No. 122 at 4.  As such, MRA maintains that the recommendation that the motion be denied should be rejected because the R&R did not apply controlling Fifth Circuit authority.  *Id.* at 5 (further arguing the R&R's basis for recommending denial does not comport with *Singh* and relies on non-controlling and inapplicable district court cases).  The Court disagrees.

As pointed out by Plaintiffs in their response, the Magistrate Judge correctly found that *Singh* and MRA's other cited cases are distinguishable.  Docket No. 125 at 6.  Plaintiffs further assert as follows:

> In *Singh,* the Plan Administrative Committee for the RadioShack Puerto Rico 1165(e) Plan was a ***separate defendant*** in the case. The three named plaintiffs did not have their own Article III standing against the Plan Administrative Committee for the RadioShack Puerto Rico 1165(e) Plan because they were not participants in that plan. Accordingly, none of the plaintiffs suffered injury ***by that particular defendant*** pursuant to that plan. That is not the case here where the Plaintiffs were injured by MRA and are seeking to assert class claims against MRA for the identical types of injuries to the class members.
>
> The Magistrate Judge correctly found, "Plaintiffs have adequately pleaded Article III standing against MRA for its conduct." R&R, 96. The focus on MRA's conduct as applicable to the named Plaintiffs and the class members is supported by the Magistrate Court's recitation of the Plaintiffs' allegations and arguments:

- Plaintiffs' allegations of a uniform, deceptive conducting by a single Defendant MRA injuring Plaintiff and putative class members *in the same way*, R&R, 2-9, 61-62, 66-68, 93;
- Plaintiffs' allegations that a single Defendant MRA maintains this scheme as to "all Texas hospitals with which MRA maintains contracts." *Id.* at 93;
- Singular Defendant MRA's "wrongful conduct is not isolated to only Steward's six hospitals in Texas[.]" *Id.*; and
- MRA has failed to show there is any difference as to the conduct alleged and how it factually applies to accident patients who "received accident treatment at other Texas hospitals." *Id.* at 94.

The Court properly found MRA's authority distinguishable because Plaintiffs established their own individual standing, Plaintiffs sufficiently alleged the class members were harmed in the same way, and MRA failed to show any difference in MRA's action resulting in harm to Plaintiffs and the class members.

*Id*. at 6–7 (emphasis in original).

Despite MRA's continued assertion that *Singh* applies here, the recent cases analyzed by the Magistrate Judge show MRA's objections are without merit.  *See* R&R at 86–87 (discussing *Shields v. Metro. Prop. & Cas. Ins. Co.*, 2020 WL 7338065 (N.D. Miss. Dec. 14, 2020); *id.* at 87 (discussing *Cedarview Mart, L.L.C. v. State Auto Prop. & Cas. Co.*, 2021 WL 1206597 (N.D. Miss. Mar. 30, 2021); 87–91 (discussing *Earl v. Boeing Co.*, 2021 WL 4034514 (E.D. Tex. Sept. 3, 2021); 91–93 (discussing *Franklin v. Apple Inc.*, 2021 WL 4989952, at *1 (E.D. Tex. Oct. 27, 2021)).  All of these cases are post-*Singh*, and two of them are authored by District Judge Mazzant of the Eastern District of Texas.  In each, the courts rejected the defendants' attempts to conflate Article III standing and class certification.  Instead, as the Magistrate Judge correctly does in this case, each case (1) found the individual plaintiffs established their own Article III standing, and (2) then deferred to Rule 23 for analysis of the difference, if any, between the claims of plaintiffs and those of putative class members.

Following the in-depth analysis of the cases examining standing for individual plaintiffs and that of class members (R&R at 83–93), and having found MRA's cited authority unpersuasive,

the Magistrate Judge ruled that once the named plaintiffs satisfy Article III, Rule 23 is the better framework for analyzing differences between the named plaintiffs and the absent class members. *Id.* at 95 (quoting *Indep. Barbershop, L.L.C. v. Twin City Fire Ins. Co.*, 499 F.Supp.3d 331, 337 (W.D. Tex. 2020); also citing *Shular v. LVNV Funding L.L.C.,* Civil Action No. H-14-3053, 2016 WL 685177, at *9 (S.D. Tex. Feb. 18, 2016) (quoting WRIGHT & MILLER, FED. PRAC. & PROC. § 1785.1, at 141 (3d ed.)) ("As long as the representative parties have a direct and substantial interest, they have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.")).

The Court's *de novo* review has noted the same split of authority on whether class action standing issues are addressed before or during the class certification process. *See Gordon v. Sig Sauer, Inc*., Civil Action No. 4:19-CV-585, 2020 WL 4783186, at *5 (S.D. Tex. Apr. 20, 2020)[9]

---

[9] In *Gordon*, the plaintiff sought to represent four subclasses (in two of these subclasses, he sought to represent individuals for state-law warranty claims in states where he did not allege he resided, purchased a P320, or was injured). *Gordon*, 2020 WL 4783186, at *6. The court held as follows:

> Gordon himself presents the standing problem, not the unnamed class members, because no named plaintiff has suffered a redressable injury in any state other than Texas. *See Flecha*, 946 F.3d at 769. To the extent that Gordon seeks to assert claims under the laws of states in which he neither resides, purchased the weapon, nor suffered any injury, Sig Sauer's motion to dismiss for lack of standing is granted. *See In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) ("Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 158 (plaintiffs can assert claims "in which they are located and in which they have members to whom they paid reimbursements").
>
> Gordon also argues that he can represent multi-state classes because Texas law will apply to the entire class. (Docket Entry No. 50 at 9 (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ("[A] court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class.")). But analyzing whether Texas law applies to the putative subclass members requires a hypothetical analysis of the unnamed plaintiffs' standing, making this argument premature until the class certification stage. *See Ortiz*, 527 U.S. at 831; *Flecha*, 946 F.3d at 769.

(comparing *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) ("These alleged problems of standing will not arise unless class certification is granted . . . and the only relevant question about the named plaintiffs' standing to represent them will be whether the named plaintiffs meet the ordinary criteria for class standing."), *with In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (allowing a proposed class action to proceed would allow named plaintiffs to represent the claims of parties whose injuries and modes of redress they would not share)).  "The debate stems from two Supreme Court decisions on the Article III standing of global settlement participants, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997)." *Id.*

*Amchem* involved a nationwide global settlement of current and future asbestos-related claims. After extensive negotiations, the parties filed a complaint, answer, proposed settlement agreement and joint motion for conditional class certification on the same day. *Id.* (citing *Amchem*, 521 U.S. at 601–02). Objectors challenged the district court's subject matter jurisdiction and raised other issues under Rule 23, which the district court rejected. *Id.* (citing *Amchem*, 521 U.S. at 607–08). The Supreme Court declined to address the subject matter jurisdiction challenge, explaining that resolution was "logically antecedent" to the Rule 23 class certification issues that resolved the case. *Id.* (citing *Amchem*, 521 U.S. at 612). But the Court pointed out that interpreting Rule 23 could only happen within Article III's constraints. *Id.* (citing *Amchem*, 521 U.S. at 612–13). The Supreme Court solidified this rule in *Ortiz*, explaining that when class certification issues are

---

Gordon has standing to represent a Texas subclass for his non-fraud claims because he is a Texas resident and suffered his alleged injury in Texas. Without named plaintiffs in any jurisdiction other than Texas, however, Gordon's multi-state warranty claims are dismissed.

*Id.*

"logically antecedent" to Article III concerns, they may be addressed before examining Article III standing. *Id.* (citing *Ortiz*, 527 U.S. at 831).

The Fifth Circuit has viewed *Ortiz* and *Amchem* as a "limited exception" to the general rule that Article III standing must be addressed first, since standing "determines the court's fundamental power . . . to hear the suit." *Id.* at *6 (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 & n.6 (5th Cir. 2002)). The Fifth Circuit distinguishes between standing problems for the class representative and the class—"if it is the class representative who presents the standing problem, then that standing issue must be addressed first prior to deciding class certification." *Id.* (quoting *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) (emphasis in original); also citing Linda S. Mullenix, *Standing and Other Dispositive Motions After Amchem and Ortiz: The Problem of "Logically Antecedent" Inquiries*, 2004 MICH. ST. L. REV. 703, 727–28 (2004) (discussing the Fifth Circuit's interpretation of *Amchem* and *Ortiz*)).

The Magistrate Judge noted in the R&R that she found the Fifth Circuit's statements in *Flecha* instructive. R&R at 89 n.12. The Court does as well. In *Flecha*, the plaintiff brought suit over a letter from Medicredit that the plaintiff claimed gave her the impression she would be sued to collect the debt and that the letter violated the FDCPA because the defendant "in fact never intended to sue her over the unpaid" debt. *Kranz v. Midland Credit Mgmt., Inc.*, Civil Action No. SA-18-CV-169-XR, 2020 WL 3899223, at *8 (W.D. Tex. July 10, 2020) (quoting *Flecha*, 946 F.3d at 765). The trial court, after disposing of summary judgment motions, certified a class consisting of:

> [A]ll persons in Texas from whom Medicredit attempted to collect and who received a form collection letter from Medicredit containing these statements:
>
>> Your seriously delinquent Seton Medical Center Hays account remains unpaid despite past requests for payment.

> At this time, a determination must be made with our client as to the disposition of your account. Your failure to cooperate in satisfying this debt indicates voluntary resolution is doubtful. However, if it is now your desire to clear your account, you need to promptly remit the balance in full.

*Id*. The defendants thereafter appealed that class certification under Rule 23(f).  *Id.*

The Fifth Circuit reversed, finding that the plaintiff failed to meet her burden of establishing commonality because the letters to some class members may not have been misleading to the extent the defendant may have actually intended to sue those particular consumers.  *Id.* at *9 (citing *Flecha*, 946 F.3d at 767 ("Every member of the putative class received the same allegedly threatening letter from Medicredit. But the FDCPA penalizes empty threats, not all threats. So the letter alone is insufficient to certify a class.")). The Fifth Circuit then, in dicta, discussed the "substantial questions of Article III standing" presented by the putative class. *Id.* (citing *Flecha*, 946 F.3d at 764).  The court remarked that "[o]ur court has not yet decided whether standing must be proven for unnamed class members, in addition to the class representative" unlike "some circuits [which] have held that 'no class may be certified that contains members lacking Article III standing.' "  *Id.* (citing *Flecha*, 946 F.3d at 768 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006))).  It continued:

> That is significant, because there are undoubtedly many unnamed class members here who lack the requisite injury to establish Article III standing. After all, the putative class sweeps in 'all persons in Texas . . . who received a form collection letter' from Medicredit. As a result, the putative class inevitably includes people who received the letter, but ignored it as junk mail or otherwise gave it no meaningful attention—and therefore lack a cognizable injury under Article III.

*Id*.  However, the Fifth Circuit concluded, "we do not reach the issue" of Article III standing for the class because there "is no need to answer the latter question [standing] if the class fails under the former [Rule 23]."  *Id.* (quoting *Flecha*, 946 F.3d at 768–69).

As quoted by the Magistrate Judge, the Fifth Circuit further stated as follows:

> To be sure, if it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification. After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise. *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) ("In the instant case, in contrast to *Ortiz* and *Amchem*, the standing question would exist whether Rivera filed her claim alone or as part of a class; class certification did not create the jurisdictional issue."); *Ford v. NYLCare Health Plans*, 301 F.3d 329, 333 (5th Cir. 2002) (same).
>
> But if it is only the unnamed class members who present a standing problem, then we are duty-bound to follow *Amchem* and *Ortiz*. Under those precedents, if there is no class action, then there is no need to analyze the Article III standing of the unnamed members of a non-existent class.
>
> In this case, no one alleges that Flecha herself has an Article III problem. The only issue is whether the unnamed class members have standing. And under *Amchem* and *Ortiz*, that standing issue is 'moot,' because the class fails under Rule 23. *See, e.g., In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 153 (E.D. Penn. 2009) (noting that if 'certification of the proposed class was improper, the issue of certain class members' standing would have been moot').

*Flecha*, 946 F.3d at 769 (emphasis in original).

The court in *Kranz* noted in a footnote that Judge Oldham, in a concurrence, would have decided the standing question first. He remarked that "we must consider unnamed class members' standing before adjudicating the merits of their claims." *Kranz*, 2020 WL 3899223 at *9 n.13 (quoting *Flecha*, 946 F.3d at 771). He agreed that "countless unnamed class members lack standing" and would have held that "that lack of standing is sufficient to decide the case." *Id.* (quoting *Flecha*, 946 F.3d at 770). However, the district court in *Kranz* concluded as follows:

> *Flecha* does raise questions as to the eventual viability of Plaintiff's proposed class, at least as it is currently defined, where there well may be unnamed class members who would not have standing. But Plaintiff has not yet sought class certification, and thus a determination as to the standing of any such class is premature, particularly where Plaintiff may seek to redefine her proposed class so as to avoid the issues raised in *Flecha*. The Supreme Court has noted that the resolution of class certification issues is "logically antecedent to the existence of any Article III issues." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) ("Ordinarily, of course, this or any Article III court must be sure of its own jurisdiction before getting to the merits . . . But the class certification issues are . . . logically antecedent to Article III

concerns."). The Fifth Circuit in *Flecha* itself remarked that a determination of the *class representative's* standing must be addressed prior to deciding class certification—which the Court here has done—but then notes that "if it is only the unnamed class members who present a standing problem, then we are duty-bound to follow *Amchem* and *Ortiz*" by deciding class certification before addressing the class members' standing. *Flecha*, 946 F.3d at 769. Under those cases, "there is no need to analyze the Article III standing of the unnamed members of a non-existent class." *Id.* When Plaintiff seeks to certify a class, Defendant may then raise its challenges to the class members' standing based on *Flecha* and the arguments set forth in this motion to dismiss.

*Kranz*, 2020 WL 3899223, at *9.

Here, like the *Flecha* court and *Krantz*, as well as the cases relied upon by the Magistrate Judge, the Court declines to reach the standing issue at this time. *Moran v. Landrum-Johnson*, Civil Action No. 19-13553, 2020 WL 4923626, at *9 (E.D. La. Aug. 21, 2020) (citing *Flecha*, 946 F.3d at 768–69 (citing *Amchem*, 521 U.S. at 612)). The Court agrees with the Magistrate Judge that there is no dispute Plaintiffs have Article III standing to bring their own claims (R&R at 95–96); (2) Plaintiffs seek to represent class members who have suffered essentially the same injury as Plaintiffs (R&R at 91–95); and (3) Rule 23 is the "better framework for analyzing differences between the named Plaintiffs and the absent class members" (R&R at 96). Accordingly, the Court overrules MRA's objections and adopts the Magistrate Judge's report as the findings and conclusion of the Court.

## CONCLUSION

The Court has carefully reviewed the relevant briefing, the Report and Recommendation, the objections and the response to the objections, and is of the opinion the findings and conclusions of the Magistrate Judge are correct. The Court **ADOPTS** the Magistrate Judge's report as the findings and conclusions of the Court. The Court will deny the pending 12(b)(1) motion without prejudice, to be re-urged after additional discovery with respect to the requirements of Rule 23. *See Moran*, 2020 WL 4923626, at *9. It is hereby

**ORDERED** that Defendants' Motion to Dismiss Second Amended Class Action Complaint (Docket No. 66) and Defendant MRA's Rule 12(b)(1) Motion to Dismiss Plaintiffs' Claims Regarding Non-Party Hospitals for Lack of Subject Matter Jurisdiction (Docket No. 95) are hereby **DENIED**.

**So ORDERED and SIGNED this 25th day of February, 2022.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE